SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, NY 10601
Tel. (914) 997-1346
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| LARRY SCERBA, WILLIAM R. ALEXANDER, JOHN BABUINI, DONALD BICKELMANN, KEITH BJORNDAL, GEORGE MARTIN BLACK, RANDELL T. BLAIR, H. WHITNEY BOGGS III, PORTER B. CALHOUN, MARK G. CLAY, TERENCE G. CONLEY, JOHN R. CROFT, KENNETH R. CURRY, PHILIP M. DEAN, ANTHONY W. DRIZA, LAWRENCE FUCHS, RONALD H. GERTSEN, WILLIAM J. GRACE, ROGER L. GRAYSON, EDWARD C. GUNDERSON, MARVIN J. HAMM, JOHN L. HARPER, CLYDE HECKERT, CHARLES HENDERSON, THOMAS J. HENION, GREGORY W. HINCHLIFFE, HENRY R. HITPAS, RONALD D. HOSKINS, JENS H. HOYT, STEVEN P. JOHNSON, TIMOTHY F. KALCEVIC, RICHARD A. KATTERICH, KARL B. KATTREIN, KENNETH C. KIRKPATRICK, DALE J. KRUSE, RICHARD J. LEVY, THOMAS LOMBARDO, CHRIS P. MARSHALL, HARRY H. MATARAS, JAMES MATEOS JR., GREGG E. MAXWELL, GLENN D. MAYNARD, DON L. MOORE, JAMES W. MURDOCH III, STEVEN C. NELSON, J.E. PERRY, KEITH J. POOL, REGINALD PRZYBYL, JOHN PURIFOY, BILLIE J. RAHM, RICHARD A. RALPH, KENNETH H. RITZENTHALER, EDWIN C. ROBERTS, RONALD R. ROGERS, ALBERT A. ROOK, SCOTT W. RUSSELL, ROBERT B. SALA, MICHAEL C. SHANHOLTZ, GARY M. SHEPPARD, THOMAS G. SAINT DENIS, ANDREW R. STEINBECK, SCOTT J. STOW, ROBERT N. SWACKER, TIMOTHY | **Case No. 13-CV-3694-LAK**<br><br>**ECF CASE**<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br>**(Jury Trial Demanded)** |

W. SWANSON, TERRY S. THAMES,
WILLIAM J. THOMAS, BARRY TRUDEAU,
DENNIS P. WALSH, WAYNE E. WEYER,
THOMAS K. WIEHL III,

                             Plaintiffs,

     v.

ALLIED PILOTS ASSOCIATION,
14600 Trinity Blvd., Suite 500
Fort Worth, TX 76155

                            Defendant.

Plaintiffs, by their attorneys, Seham, Seham, Meltz & Petersen, LLP, as and for their Complaint in the above-captioned action, respectfully allege as follows:

## NATURE OF ACTION

1.      Plaintiffs bring this action against defendant Allied Pilots Association ("APA") for breach of its duty of fair representation, and violation of Plaintiffs' statutory right to arbitration, under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Plaintiffs are all senior pilots employed by American Airlines, Inc. ("American"), who were hired by American prior to November 1, 1983, and who were covered by Supplement B of the Collective Bargaining Agreement between APA and American – until defendant's recent unlawful conduct. Pilots covered by Supplement B, including Plaintiffs, are referred to herein as "Supplement B Pilots."

2.      Supplement B was entered into in 1983 in consideration for the significant contractual concessions made by American's pilots at that time, which were designed to permit American to compete effectively over the indefinite future. Pursuant to Supplement B, APA and American agreed that they would "take no action, at any time … to diminish the pay or the

retirement benefit programs in effect on [November 4, 1983] for pilots hired prior to November 1, 1983…."

3.      American and APA agreed that Supplement B would remain in effect as long as any pre-November 1, 1983 hires remain employed and that the terms of Supplement B could only be modified "by unanimous agreement between the parties and a majority of the [covered] pilots…."  Thus, APA successfully bargained for "permanent guarantees" of employment and financial security at existing levels for pre-1983 pilots and for a process specifically designed to protect these pilots as they became a minority within APA's membership.

4.      APA and American agreed in Supplement B that they would defend the "legality, validity, and enforceability" of Supplement B "in any judicial, administrative, or other proceeding involving any of its provisions."  However, during the American Airlines Chapter 11 bankruptcy proceedings, including American's successful efforts to abrogate Supplement B without opposition from APA, and the negotiations for a new collective bargaining agreement, APA arbitrarily, discriminatorily, and in bad faith failed and refused to defend the "legality, validity, and enforceability" of Supplement B.  APA's failure to defend Supplement B constitutes a bad faith subversion of the permanent accord reached in 1983, which violates APA's duty of fair representation.

## PARTIES

**Plaintiffs**

5.      Plaintiff Larry Scerba is a resident of Warrenton, Virginia, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

6.      Plaintiff William R. Alexander is a resident of Colleyville, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

7.      Plaintiff John Babuini is a resident of Key Biscayne, FL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

8.      Plaintiff Donald Bickelmann is a resident of Arlington, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

9.      Plaintiff Keith Bjorndal is a resident of Sanger, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

10.     Plaintiff George Martin Black is a resident of Pismo Beach, CA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

11.     Plaintiff Randell T. Blair is a resident of Southlake, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

12.     Plaintiff H. Whitney Boggs III is a resident of Shreveport, LA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

13.     Plaintiff Porter B. Calhoun is a resident of Franklin, TN, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

14.     Plaintiff Mark G. Clay is a resident of Deale, MD, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

15.     Plaintiff Terence G. Conley is a resident of Wolfeboro, NH, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

16.     Plaintiff John R. Croft is a resident of the Village of Lakewood, IL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

17.     Plaintiff Kenneth R. Curry is a resident of Cookeville, TN, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

18.     Plaintiff Philip M. Dean is a resident of Plano, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

19.     Plaintiff Anthony W. Driza is a resident of West Olive, MI, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

20.     Plaintiff Lawrence Fuchs is a resident of Cedar Run, NJ, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

21.     Plaintiff Ronald H. Gertsen is a resident of Kinnelon, NJ, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

22.     Plaintiff William J. Grace is a resident of Coral Springs, FL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

23.     Plaintiff Roger L. Grayson is a resident of Columbus, IN, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

24.     Plaintiff Edward C. Gunderson is a resident of Naples, FL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

25.     Plaintiff Marvin J. Hamm is a resident of Richardson, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

26.     Plaintiff John L. Harper is a resident of Corsicana, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

27.    Plaintiff Clyde Heckert is a resident of Grapevine, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

28.    Plaintiff Charles Henderson is a resident of Elmhurst, IL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

29.    Plaintiff Thomas J. Henion is a resident of Hilton, NY, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

30.    Plaintiff Gregory W. Hinchliffe is a resident of Baltimore, MD, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

31.    Plaintiff Henry R. Hitpas is a resident of Andover, NJ, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

32.    Plaintiff Ronald D. Hoskins is a resident of Raleigh, NC, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

33.    Plaintiff Jens H. Hoyt is a resident of New Millford, CT, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

34.    Plaintiff Steven P. Johnson is a resident of Weston, FL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

35.    Plaintiff Timothy F. Kalcevic is a resident of Gurnee, IL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

36.    Plaintiff Richard A. Katterich is a resident of Irving, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

37.    Plaintiff Karl B. Kattrein is a resident of Brookfield, CT, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

38.     Plaintiff Kenneth C. Kirkpatrick is a resident of Seneca, IL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

39.     Plaintiff Dale J. Kruse is a resident of Weston, FL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

40.     Plaintiff Richard J. Levy is a resident of Chicago, IL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

41.     Plaintiff Thomas Lombardo is a resident of Grasonville, MD, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

42.     Plaintiff Chris P. Marshall is a resident of Maryville, TN, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

43.     Plaintiff Harry H. Mataras is a resident of Bay Harbor Island, FL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

44.     Plaintiff James Mateos Jr. is a resident of Grapevine, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

45.     Plaintiff Gregg E. Maxwell is a resident of Grapevine, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

46.     Plaintiff Glenn D. Maynard is a resident of Denton, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

47.     Plaintiff Don L. Moore is a resident of Longwood, FL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

48.     Plaintiff James W. Murdoch III is a resident of Spicewood, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

49.     Plaintiff Steven C. Nelson is a resident of new Albany, OH, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

50.     Plaintiff J.E. Perry is a resident of Miami, FL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

51.     Plaintiff Keith J. Pool is a resident of Tulsa, OK, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

52.     Plaintiff Reginald Przybyl is a resident of Fort Worth, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

53.     Plaintiff John Purifoy is a resident of Colleyville, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

54.     Plaintiff Billie J. Rahm is a resident of Encitas, CA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

55.     Plaintiff Richard A. Ralph is a resident of Granite Bay, CA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

56.     Plaintiff Kenneth H. Ritzenthaler is a resident of Mt. Prospect, IL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

57.     Plaintiff Edwin C. Roberts is a resident of West Ossipee, NH, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

58.     Plaintiff Ronald R. Rogers is a resident of Laguna Niguel, CA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

59.     Plaintiff Albert A. Rook is a resident of Washington, D.C., and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

60.     Plaintiff Scott W. Russell is a resident of Saint Cloud, FL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

61.     Plaintiff Robert B. Sala is a resident of Mahwah, NJ, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

62.     Plaintiff Michael C. Shanholtz is a resident of Village of Lakewood, IL, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

63.     Plaintiff Gary M. Sheppard is a resident of Granbury, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

64.     Plaintiff Thomas G. Saint Denis is a resident of Virginia Beach, VA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

65.     Plaintiff Andrew R. Steinbeck is a resident of Georgetown, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

66.     Plaintiff Scott J. Stow is a resident of Rye, NH, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

67.     Plaintiff Robert N. Swacker is a resident of Southlake, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

68.     Plaintiff Timothy W. Swanson is a resident of Sammamish, WA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

69.     Plaintiff Terry S. Thames is a resident of Red Level, AL, and at all relevant times was employed by American Airlines, Inc. and was represented by the APA.

70.     Plaintiff William J. Thomas is a resident of Savannah, GA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

71.     Plaintiff Barry Trudeau is a resident of Jackson, NH, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

72.     Plaintiff Dennis P. Walsh is a resident of San Diego, CA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

73.     Plaintiff Wayne E. Weyer is a resident of Euless, TX, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

74.     Plaintiff Thomas K. Wiehl III is a resident of Earlysville, VA, and at all relevant times was employed as a pilot by American Airlines, Inc. and was represented by the APA.

**Defendant**

75.     Defendant APA is an unincorporated association organized for the purpose and objective of a labor organization and is a "representative" as defined in Section 1, Sixth of the Railway Labor Act ("RLA"), 45 U.S.C. § 151, Sixth.

76.     APA is the certified collective bargaining representative of all of the pilots employed by American Airlines, and has represented American's pilots since 1963.

77.     APA's principal place of business is located in Fort Worth, Texas.

78.     APA has eight pilot bases or "domiciles," including a domicile in New York.

79.     The APA Board of Directors is comprised of the chairman and vice chairman from each of the eight domiciles, including New York.

80.     APA conducts business in New York through its New York domicile.

## JURISDICTION AND VENUE

81.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), because the case arises under the laws of the United States, specifically, the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, under which the duty of fair representation owed by unions to those they represent arises.

82.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because APA resides in this district, based on the definition of "residency" in 28 U.S.C. § 1391(c)(2).

83.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

84.     The events or omissions occurring in this district and giving rise to the claim include American Airlines' Chapter 11 bankruptcy pending in the U.S. Bankruptcy Court for the Southern District of New York, and contract negotiations between American Airlines and APA held in this district, including negotiations mediated by the U.S. Bankruptcy Court for the Southern District of New York.

## FACTUAL BACKGROUND

**The History of Supplement B**

85.     In 1983, American was pinned by rising fuel costs and a fleet of aging, inefficient aircraft, and was threatened by competition from lower-cost carriers.  In order to ensure that American would survive such severe economic conditions, its pilots at that time agreed to relinquish a seven percent (7%) wage increase, and agreed to other concessions.  The concessions granted by American's pilots in 1983 enabled American to become a leader in the airline industry and an unqualified success.

86.     In consideration for the pilots' contractual concessions, American and APA entered into Supplement B of the Collective Bargaining Agreement ("Supplement B") on November 4, 1983.

87.     A copy of Supplement B is attached hereto as Exhibit A.

88.     American and APA acknowledged in Supplement B that "the current pilot group through the Association [APA] has made significant concessions with respect to its established contract rights which are designed to permit the Company to compete effectively over the indefinite future."  (Supplement B, Preamble).

89.     American and APA agreed in Supplement B that they would "take no action, at any time, by way of notice, negotiations or otherwise, to diminish the pay or the retirement benefit programs in effect on the date hereof for pilots hired prior to November 1, 1983…." (Supplement B, § B.1).

90.     Unlike any other part of the American-APA Collective Bargaining Agreement, American and APA intended that Supplement B would live in perpetuity.

91.     Reflecting the mutual intent of American and APA, Supplement B provided that it would "remain in effect so long as any pilot with job security remains in the active employ of the Company as a flight crew member or retains recall rights."  (Supplement B, § B.2).

92.     In a 1987 arbitration, the parties to Supplement B recognized the exclusive jurisdiction of the American-APA System Board of Adjustment to interpret Supplement B. (Lump-Sum Retirement Option, Case No. P-01-88, at 28, hereinafter referred to as the "Lump-Sum Arbitration").

93.     In the Lump-Sum Arbitration, the American-APA System Board of Adjustment concluded, in a written Decision and Award that upon issuance became part of the Collective

Bargaining Agreement, that in negotiating Supplement B, "APA bargained for permanent guarantees of employment and financial security at existing levels for pre-1983 Pilots in exchange for the concessions made in 1983." (Lump-Sum Arbitration at 28).

94.     In the Lump-Sum Arbitration, the American-APA System Board of Adjustment interpreted Supplement B as follows: "This provision is phrased in exceptionally broad terms.  It covers action in any form – whether by way of notice, negotiations, <u>or otherwise</u> – and it remains in effect beyond the term of the current agreement as long as any Pilot with job security remains active or retains recall rights." (Lump-Sum Arbitration at 21)(emphasis in original).

95.     Pursuant to Supplement B, American and APA further agreed to "irrevocably waive" the right to modify its provisions. (Supplement B, § B.2).

96.     Supplement B provided that the terms of Supplement B could only be changed "by unanimous agreement between the parties and a majority of the pilots with job security and guarantee of employment as provided herein." (Supplement B, § B.2.).

97.     Supplement B provided a permanent guarantee of employment and financial security for pre-1983 pilots and for a process designed to protect those pilots as they became, gradually over time, a minority of the APA's membership.

98.     Pursuant to Supplement B, American and APA were obligated to confer and negotiate with the Supplement B Pilots as a group prior to making any effort to modify the terms of Supplement B.

99.     Supplement B provided that neither American nor APA "shall challenge, contest, or question the legality, validity, or enforceability of [Supplement B], or any provision thereof, in any judicial, administrative, or other proceeding…." (Supplement B, § B.3).

100.    Supplement B further provided that American and APA "shall participate in defending the legality, validity, and enforceability of this Agreement in any judicial, administrative, or other proceeding involving any of its provisions."  (Supplement B, § B.3).

101.    There are currently approximately 140 Supplement B Pilots in the active employ of American.

102.    American currently employs a total of approximately 10,000 pilots.


**The American Airlines Bankruptcy**

103.    On November 29, 2011, American filed a petition for relief under Chapter 11 of the United States Bankruptcy Code.

104.    Section 1113(f) of the Bankruptcy Code prohibited American from unilaterally terminating or altering any provisions of a collective bargaining agreement prior to compliance with Section 1113.

105.    At all times prior to September 5, 2012, the American-APA Collective Bargaining Agreement, including Supplement B, was in full force and effect.

106.    On March 22, 2012, the Supplement B Pilots demanded that APA and the Company comply with the contractual requirement to negotiate with the Supplement B Pilots over any contemplated changes to existing benefit programs that would adversely affect pilots hired prior to November 1, 1983.

107.    American and APA refused to meet or negotiate with the Supplement B Pilots concerning proposed changes to Supplement B.

108.    On March 27, 2012, American filed a motion with the bankruptcy court seeking permission to reject its collective bargaining agreement with the APA pursuant to Section 1113 of the Bankruptcy Code, 11 U.S.C. § 1113.

109.    As part of the Section 1113 process, American proposed changes that would diminish the existing pay and benefit programs of its pilots in a manner that would adversely affect the Supplement B Pilots, causing them and their heirs financial loss.

110.    Through these proposals and resulting negotiations with APA, American violated the procedural provisions of Supplement B by engaging in efforts to modify or eliminate Supplement B without consulting and negotiating with the covered pilots.

111.    Moreover, American violated Supplement B substantively immediately after filing its bankruptcy petition by advising covered pilots that, if they chose to retire after the bankruptcy filing, they were no longer entitled to the lump-sum retirement option of the pilots' defined benefit plan (the "A Fund").

112.    Upon information and belief, APA encouraged and/or acquiesced in American's violations of Supplement B as part of a broader policy of shifting the burden of shared sacrifice to a disfavored political minority.

113.    In April-May 2012, the bankruptcy court held a trial on American's § 1113 motion to reject the pilots' Collective Bargaining Agreement.

114.    At the time of the § 1113 trial, Supplement B had not been abrogated and was in full force and effect.

115.    At the time of the § 1113 trial, APA was obligated to defend the "legality, validity, and enforceability of [Supplement B] in any … proceeding."  (Supplement B, § B.3).

116.    However, APA submitted no evidence in defense of Supplement B during the §

1113 trial, to the detriment of the Plaintiffs.

117.    APA's failure to defend Supplement B in the § 1113 trial violated its obligation to

defend the "legality, validity, and enforceability of [Supplement B] in any … proceeding."

(Supplement B, § B.3).

118.    Throughout the negotiations between American and APA prior to September 5,

2012, Supplement B was in full force and effect.

119.    On or about June 26, 2012, American issued a "Last, Best and Final Offer" to the

APA.

120.    The June 26, 2012 "Last, Best and Final Offer" included American's proposal that

"APA need not agree to the abrogation of Supplement B, but shall not oppose any future

Company efforts to abrogate Supplement B."  (Main Agreement, Section IV.7).

121.    On June 27, 2012, the APA Board of Directors approved American's June 26,

2012 "Last, Best and Final Offer" as a tentative agreement.

122.    By approving American's June 26, 2012 "Last, Best and Final Offer," the APA

Board of Directors agreed that APA "shall not oppose any future Company efforts to abrogate

Supplement B."

123.    At the time that American proposed that APA "shall not oppose any future

Company efforts to abrogate Supplement B," Supplement B had not been abrogated and was in

full force and effect.

124.    At the time that American proposed that APA "shall not oppose any future

Company efforts to abrogate Supplement B," APA was obligated to defend the "legality,

validity, and enforceability of [Supplement B] in any … proceeding."  (Supplement B, § B.3).

125.   APA's agreement not to oppose abrogation of Supplement B was in clear violation of its obligation to defend the "legality, validity, and enforceability of [Supplement B] in any … proceeding."  (Supplement B, § B.3).

126.   On September 5, 2012, without opposition from APA, the bankruptcy court issued an order authorizing American to reject its collective bargaining agreement, including Supplement B, with the APA.

127.   On December 7, 2012, American's pilots ratified a new collective bargaining agreement that did not include Supplement B.

**APA's Support for the Elimination of the Lump-Sum Benefit**

128.   One of the benefits that was in effect at the time of the execution of Supplement B in 1983 was the option entitling retiring pilots to receive their defined benefit plan (A Fund) retirement benefits in a single-sum distribution (also referred to as a lump-sum distribution) instead of in monthly payments.

129.   Supplement B guaranteed the continuation of the single-sum distribution benefit for all pilots who were hired prior to November 1, 1983.

130.   On June 21, 2012, the Internal Revenue Service issued a notice of proposed rulemaking, proposing to issue regulations permitting a plan sponsor that is a debtor in a bankruptcy proceeding to amend its single-employer defined benefit plan to eliminate a single-sum distribution option under the plan if certain specified conditions are satisfied.  77 Fed. Reg. 37349.

131.    On August 20, 2012, American submitted comments in support of the proposed IRS regulation, which would permit American to amend the pilots' defined benefit plan to eliminate the single-sum distribution option.

132.    American's comments in support of the proposed IRS regulation did not seek an exception for the Supplement B Pilots, to the detriment of the Plaintiffs.

133.    On August 20, 2012, APA submitted comments in support of the proposed IRS regulation, which would permit American to amend the pilots' defined benefit plan to eliminate the single-sum distribution option.

134.    APA's comments in support of the proposed IRS regulation did not seek an exception for the Supplement B Pilots, to the detriment of the Plaintiffs.

135.    Upon information and belief, APA failed to seek a determination from the Pension Benefit Guaranty Corporation that the elimination of the single-sum distribution option for the pilots covered by Supplement B was not necessary to avoid a distress or involuntary termination of the American Airlines Pilots' Defined Benefit Plan.

136.    APA failed to defend the Supplement B Pilots' right under Supplement B to the continuation of the lump-sum distribution option.

137.    APA's submission to the IRS, which was filed while Supplement B was in full force and effect, contained no exception for Supplement B-protected pilots, and, therefore, was in direct violation of its substantive and procedural commitments that it would take no action to diminish the pay or benefits of the Supplement B Pilots, including any action that would eliminate the lump-sum distribution option.

138.    APA's agreement, made in collusion with American, to support the elimination of the lump-sum option was in clear violation of its obligation to defend the "legality, validity, and enforceability of [Supplement B] in any … proceeding."  (Supplement B, § B.3).

18

**APA's Agreement to Extinguish the Supplement B Grievances**

139.    On March 30, 2012, Plaintiff Larry Scerba filed a grievance on behalf of himself and all other American pilots hired prior to November 1, 1983 (hereinafter referred to as the "Scerba Grievance").

140.    The purpose of the Scerba Grievance was to grieve American's substantive and procedural violations of Supplement B.

141.    Approximately 65 other Supplement B Pilots filed individual grievances containing the same claims as the Scerba Grievance (hereinafter referred to as the "Individual Grievances").

142.    APA had no role in the drafting or submission of the Scerba Grievance or any of the Individual Grievances.

143.    Neither Plaintiff Scerba nor any of the grievants who filed the Individual Grievances granted any authority to APA to withdraw, settle or otherwise dispose of the Scerba Grievance or the Individual Grievances.

144.    On or about November 9, 2012, American and APA reached an agreement-in-principle on a new collective bargaining agreement.

145.    On or about November 16, 2012, the APA Board of Directors voted to approve the agreement-in-principle as a tentative agreement.

146.    As part of the tentative agreement reached between American and APA in November 2012, APA agreed to extinguish the Scerba Grievance, and all of the Individual Grievances, effectively denying Plaintiffs access to the System Board of Adjustment to their detriment.

147.    APA's agreement to extinguish the Scerba Grievance and all of the Individual Grievances was without the consent of Plaintiff Scerba or any of the grievants who filed the Individual Grievances.

148.    APA's agreement to extinguish the Scerba Grievance and all of the Individual Grievances was arbitrary, discriminatory, and in bad faith.

## COUNT I
## BREACH OF DUTY OF FAIR REPRESENTATION

149.    Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 148 as if fully set forth herein.

150.    Plaintiffs assert a claim against APA for its breach of duty of fair representation under the Railway Labor Act.

151.    Under the RLA, APA, as the exclusive bargaining agent of American's pilots, owed a duty of fair representation to the Plaintiffs.

152.    This duty encompasses the obligation to serve the interests of all American pilots without hostility or discrimination toward any, to exercise its discretion with complete good faith, and honesty and to avoid arbitrary conduct.

153.    The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit.

154.    A union breaches its duty of fair representation if, *inter alia,* it intentionally causes harm to an employee, discriminates against an employee or employee group, neglects the interests of a membership minority solely to advantage the membership majority, or by acting for the sole purpose of benefitting a stronger, more politically favored group over a minority segment of the union.

155.     APA has breached its duty of fair representation to Plaintiffs by discriminating against, expressing hostility and acting with animosity towards, the Supplement B Pilots and choosing the interests of the stronger, more politically favored group of junior pilots over the interests of Plaintiffs in the context of the § 1113 bankruptcy proceedings and contract negotiations.

156.     APA's failure to defend the legality, validity, and enforceability of Supplement B in American's Chapter 11 bankruptcy, including the § 1113 negotiations and proceedings, was arbitrary, discriminatory, and in bad faith, and constitutes a violation of its duty of fair representation.

157.     APA's agreement not to oppose American's efforts to abrogate Supplement B was arbitrary, discriminatory, and in bad faith, and constitutes a violation of its duty of fair representation.

158.     APA's support of American's elimination of the lump-sum distribution option, without seeking an exception for the Supplement B Pilots, was arbitrary, discriminatory, and in bad faith, and constitutes a violation of its duty of fair representation.

159.     APA's agreement to extinguish the Scerba Grievance and all of the Individual Grievances without the consent of Plaintiff Scerba or any of the grievants who filed the Individual Grievances, and effectively  deny access to the System Board of Adjustment, was arbitrary, discriminatory, and in bad faith, and constitutes a violation of its duty of fair representation.

160.     By reason of APA's breach of its duty of fair representation, each Plaintiff has suffered injury caused by APA's breach.

**COUNT II**

**VIOLATION OF THE STATUTORY RIGHT TO ARBITRATION**

161.    Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 160 as if fully set forth herein.

162.    Defendant APA was at all times under a statutory duty, pursuant to § 204 of the RLA, 45 U.S.C. § 184, to establish and maintain a System Board of Adjustment to hear grievances in arbitration.

163.    Defendant APA was at all times under a statutory duty, pursuant to § 204 of the RLA, 45 U.S.C. § 184, to allow any employee to refer to the System Board of Adjustment disputes between an employee or group of employees and a carrier by air.

164.    Plaintiff Larry Scerba, and the grievants who filed the Individual Grievances, are aggrieved airline employees with statutory rights to pursue their grievances individually, apart from the APA, and all such grievants are entitled to access to the System Board of Adjustment under the RLA, with representation of their choice in the hearing, at their own expense, for this purpose.

165.    As part of the tentative agreement reached between American and APA in November 2012, APA agreed to extinguish the Scerba Grievance, and all of the Individual Grievances, without consent of the grievants, effectively denying Plaintiffs access to the System Board of Adjustment to their detriment.

166.    Plaintiffs' rights cannot be nullified merely by agreement between American and the APA.  They are statutory rights, which Plaintiffs may exercise independently.  *Elgin Joliet & Eastern Railway Co. v. Burley*, 325 U.S. 711, 740 (1945) (*citing* 45 U.S.C. § 152, Sixth; 45 U.S.C. § 153 First (i); 45 U.S.C. § 153 First (j)).

167. The APA's conduct in agreeing to extinguish the Scerba Grievance and all of the Individual Grievances constitutes a denial of Plaintiffs' access to the System Board of Adjustment, and violates the Plaintiffs' individual, statutory rights under the RLA, 45 U.S.C. § 151, *et seq.*

**WHEREFORE,** Plaintiffs request that the Court:

A. Issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that Defendant APA violated its duty of fair representation owed to Plaintiffs, as alleged in this Complaint;

B. Issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that Defendant APA violated the RLA by agreeing to extinguish the Scerba Grievance and all of the Individual Grievances, without consent of the grievants;

C. Award Plaintiffs compensatory damages in an amount to be determined herein, including pre- and post-judgment interest;

D. Award Plaintiffs their reasonable attorneys' fees and costs of suit; and

E. Such other and further relief as is just and proper under the circumstances.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues so triable.

Dated: <u>May 30, 2013</u>

*/s/ Stanley J. Silverstone*
_____
Lee Seham
Stanley J. Silverstone
Lucas Middlebrook
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, NY 10601
Tel. (914) 997-1346
Fax (914) 997-7125
lseham@ssmplaw.com
ssilverstone@ssmplaw.com
lmiddlebrook@ssmplaw.com

Nicholas Granath
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN 55405
Tel. (612) 341-9080
Fax (612) 341-9079
ngranath@ssmplaw.com

*Attorneys for Plaintiffs*

# **<u>EXHIBIT A</u>**

SUPPLEMENT B

AGREEMENT
between
AMERICAN AIRLINES, INC.
and
THE AIR LINE PILOTS
in the service of
AMERICAN AIRLINES, INC.
as represented by
ALLIED PILOTS ASSOCIATION

THIS AGREEMENT is made and entered into in accordance with the provisions of the Railway Labor Act, as amended, by and between AMERICAN AIRLINES, INC., hereinafter known as the "Company" and the AIR LINE PILOTS in the service of AMERICAN AIRLINES, INC., as represented by the ALLIED PILOTS ASSOCIATION, hereinafter known as the "Association".

WHEREAS, the Company and the Association recognize the problems that have arisen as a result of deregulation of the airline industry; and

WHEREAS, the parties recognize that innovative approaches must be used in order to assure employees and management that the Company shall remain competitive in a changed economic environment; and

WHEREAS, the Company and the Association acknowledge the contributions that each has made over the past years to the status of the Company as a leading air carrier; and

WHEREAS, the current pilot group through the Association has made significant concessions with respect to its established contract rights which are designed to permit the Company to compete effectively over the indefinite future;

NOW, THEREFORE, the parties hereby agree to the following terms, provided the provisions of the Basic Agreement shall apply except as modified herein, and in the event of a conflict, the provisions herein shall apply:

A.  Job Security

   1.  General

The Company will guarantee employment and grant system job security forever as a pilot to all pilots covered by the Basic Agreement who were on the Company's active flight payroll on November 1, 1983, or on an Association Leave of Absence on that date, or on an approved leave of absence on that date, provided that such pilot on such leave of absence has a pilot seniority date more senior than the least senior pilot with job security upon his return to the active flight payroll.

   2.  Category Protection
*[ "Supernumerary" updated to "secondary". See Letter QQ "Summary of Updates"]*
    a.  In each contractual month the Company will guarantee at each base, a number of captain and copilot positions [regular, reserve, relief, supernumerary, designations and temporary assignments 18.C.1. (full month)].  This number will be equal to the number of captain and copilot positions for the contractual months of November and December 1983, or as established in the 1983 Flex Protection Floor, whichever is greater.

    b.  (1) Effective January 1, 1984, 1394 captain pay positions and 1375 copilot pay positions will be guaranteed throughout the system to the extent of the number of pilots covered by paragraph f. below.
*[ "Supernumerary" updated to "secondary". See Letter QQ "Summary of Updates"]*
      (2) In each calendar year that such category pay protection is in effect, a recalculation will be made at the end of the contractual months of June and December.  Such recalculation shall be made by dividing the number of captain and copilot positions at each base [regular, reserve, relief, supernumerary, designations and temporary assignments 18.C.1. (full month)] by the total number of such positions [regular, relief, supernumerary, designations and temporary assignments 18.C.1. (full month)] in the system to establish a ratio by base.  Such ratio shall be applied to the January 1, 1984 guaranteed number in b.1. above to determine the number of company obligations at each base for the six (6) subsequent contractual months.

    c.  In the event of a base closing, the obligated positions of the closed base will be distributed among the remaining bases.

    d.  In the event of a base opening, the obligated positions for such newly opened base, as well as the adjustment of the obligated positions of the remaining bases will be determined in accordance with b.2. above.

    e.  When the number of positions awarded at a base in a contractual month is less than the obligated number in category, then the pilot or pilots who selected all trip selections, including reserve, in the next higher category, but were not awarded a trip selection(s) in such category will receive the reserve guarantee for the lowest equipment in the category involved. The number of pilots eligible for such compensation will be the difference between the positions awarded and the obligated number. The pilot must be previously or currently qualified in the category to be eligible for pay protection.

    f.  Such category protection will be afforded only to pilots active on the payroll on November 1, 1983.

3.  Job Security For Pilots Hired Prior To November 1, 1983 and On Furlough Status On That Date

Pilots on flight furlough status from the Company on November 1, 1983 who retain recall rights and who are subsequently recalled and reemployed as a pilot for the Company shall receive the same job security and guarantee of employment as afforded pilots in A.I. above, provided however, such job security and guarantee of employment shall be provided only in order of seniority on a one-for-one basis as pilots under A.1. above and as flight engineers permanently leave the employ of the Company. The number of pilots extended job security and guarantee of employment under this provision shall not exceed the number of individuals on flight furlough status on November 1, 1983.

4.  Exceptions To Job Security

Notwithstanding the above provisions, the Company may furlough in accordance with Section 25 of the Basic Agreement any pilot with job security as provided herein when that furlough is necessitated by any one or more of the following conditions:

    a.  An act of God,

    b.  A strike by any Company employee group,

    c.  A national emergency,

    d.  Involuntary revocation of the Company's operating certificate or certificates,

    e.  A reduction in the Company's operation resulting from a decrease in available fuel supply caused by either governmental action or by commercial suppliers being unable to meet the Company's demands.

This Agreement does not in any way limit the Company's right to discharge or discipline a pilot for just cause or disqualify a pilot due to medical reasons as defined in the Basic Agreement effective this date.

B.  Pay and Retirement Benefit Programs For Pilots Hired Prior To November 1, 1983

1.  The Company agrees that it will take no action, at any time, by way of notice, negotiations or otherwise, to diminish the pay or the retirement benefit programs in effect on the date hereof for pilots hired prior to November 1, 1983, and that such pilots shall enjoy such pay and pension benefits for so long as they are qualified under applicable governmental regulations and the provisions of the Collective Bargaining Agreement to perform flying duties, on an approved leave of absence, or disability retirement, and this Agreement shall remain in effect for such period of time.

2.  This Agreement as provided herein shall remain in effect so long as any pilot with job security remains in the active employ of the Company as a flight crew member or retains recall rights. The parties hereto, as well as the persons bound hereby, irrevocably waive the right to serve any Section 6 notice, under

the Railway Labor Act, of an intended change which, if adopted, would have the effect of modifying any of the provisions contained in this Agreement or otherwise to require bargaining as to such provisions, provided, however, that this Agreement may be changed by unanimous agreement between the parties and a majority of the pilots with job security and guarantee of employment as provided herein.

3. Neither the Company nor the Allied Pilots Association, their successors, assigns or affiliates, shall challenge, contest, or question the legality, validity, or enforceability of this Agreement, or any provision thereof, in any judicial, administrative, or other proceeding, and each of the parties shall participate in defending the legality, validity, and enforceability of this Agreement in any judicial, administrative, or other proceeding involving any of its provisions.

C. Nothing contained herein shall be deemed to restrict either party from negotiating a change in the differentials between the respective pay or the retirement benefit programs of the pilots in the employ of the Company prior to November 1, 1983 and those hired on or after November 1, 1983, provided, however, that neither party will attempt to totally eliminate the existing differentials.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement this the 4th day of November, 1983.

WITNESS:                                        FOR AMERICAN AIRLINES, INC.


                                                 */signed/*
P. A. Smythe                                     C. A. Pasciuto
G. A. Hof, Jr.                                   Vice President
J. J. Sprufera                                   Employee Relations
T. R. Miller
J. D. Murff
N. J. Ammann
                                                 */signed/*
                                                 D. E. Ehmann
                                                 Vice President-Flight


WITNESS:                                        FOR THE AIR LINE PILOTS IN THE
                                                 SERVICE OF AMERICAN AIRLINES, INC.
F. R. Vogel                                      AS REPRESENTED BY THE
F. C. Fosdick                                    ALLIED PILOTS ASSOCIATION
C. H. Riley
L. E. Hughes                                     */signed/*
W. E. Prather, Jr.                               R. H. Malone
R. S. Carlson                                    President
T. V. Keohane
J. C. Maiden
C. R. Kalin