UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LARRY SCERBA, et al.,                          :

                  Plaintiffs,          :          13 Civ. 3694 (LAK) (AJP)

           -against-                 :          **REPORT AND RECOMMENDATION**

ALLIED PILOTS ASSOCIATION,                     :

                Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Lewis A. Kaplan, United States District Judge:**

        Plaintiffs bring this action against the Allied Pilots Association ("APA"), their collective bargaining representative, for breach of the duty of fair representation and violation of the Railway Labor Act ("RLA").  (Dkt. No. 1: Compl. ¶¶ 149-67.)  Presently before the Court is defendant APA's motion to dismiss the action as time-barred pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 13: Notice of Motion.)

        For the reasons set forth below, APA's motion should be <u>GRANTED</u> and the case should be dismissed as time-barred.

<u>FACTS</u>

        Plaintiffs are sixty-nine senior airline pilots (the "Pilots") employed by American Airlines, Inc. prior to November 1, 1983, who were covered by Supplement B to the Collective Bargaining Agreement ("CBA") between American and defendant Allied Pilots Association ("APA"), the certified collective bargaining representative for American's pilots.  (Dkt. No. 1: Compl. ¶¶ 1, 5-76; Dkt. No. 14: APA Br. at 2.)

**Supplement B**

In 1983, the Pilots agreed to certain concessions to alleviate economic conditions that threatened American's survival.  (Dkt. No. 1: Compl. ¶¶ 2, 85, 88 & Ex. A: Supp. B Preamble; Dkt. No. 14: APA Br. at 2; Dkt. No. 17: Scerba Opp. Br. at 2.)  In consideration for these concessions, the APA and American entered into Supplement B to the CBA on November 4, 1983.  (Compl. ¶¶ 2, 86 & Ex. A: Supp. B Preamble; APA Br. at 2; Scerba Opp. Br. at 2.)  "The intent of Supplement B was to ensure that the [P]ilots who had ensured the survival of the airline would not later become victims as a disfavored minority as more junior pilots assumed a majority position."  (Scerba Opp. Br. at 2; accord Compl. ¶ 3.)

At issue in American's underlying bankruptcy proceeding and in this action are the following provisions of Supplement B:

1.    The Company [American] agrees that it will take no action, at any time, by way of notice, negotiations or otherwise, to diminish the pay or the retirement benefit programs in effect on the date hereof for pilots hired prior to November 1, 1983, and that such pilots shall enjoy such pay and pension benefits for so long as they are qualified under applicable governmental regulations and the provisions of the Collective Bargaining Agreement to perform flying duties, on an approved leave of absence, or disability retirement, and this Agreement shall remain in effect for such period of time.

2.    This Agreement as provided herein shall remain in effect so long as any pilot with job security remains in the active employ of the Company as a flight crew member or retains recall rights.  The parties hereto, as well as the persons bound hereby, irrevocably waive the right to serve any Section 6 notice, under the Railway Labor Act, of an intended change which, if adopted, would have the effect of modifying any of the provisions contained in this Agreement or otherwise to require bargaining as to such provisions, provided, however, that this Agreement may be changed by unanimous agreement between the parties and a majority of the pilots with job security and guarantee of employment as provided herein.

3.    Neither the Company nor the Allied Pilots Association, their successors, assigns or affiliates, shall challenge, contest, or question the legality, validity, or enforceability of this Agreement, or any provision thereof, in any judicial,

administrative, or other proceeding, and each of <u>the parties shall participate</u> <u>in defending the legality, validity, and enforceability of this Agreement in</u> <u>any judicial, administrative, or other proceeding involving any of its</u> <u>provisions</u>.

(Compl. Ex. A: Supp. B §§ B.1-B.3, emphasis added; <u>see</u> Compl. ¶¶ 3-4, 89-100; APA Br. at 2; Scerba Opp. Br. at 2-3.)

## Timeline: American's Bankruptcy Proceedings and Negotiations With the APA

American filed for Chapter 11 bankruptcy on November 29, 2011. (Dkt. No. 1: Compl. ¶ 103; Dkt. No. 14: APA Br. at 3; Dkt. No. 17: Scerba Opp. Br. at 3.) "[I]mmediately after filing its bankruptcy petition," American notified the Pilots that they were no longer entitled to lump-sum retirement benefit payments. (Compl. ¶ 111; APA Br. at 3.)

On March 22, 2012, the Pilots demanded that American and the APA negotiate with them concerning this adverse change to their retirement benefits, as required by Supplement B. (Compl. ¶¶ 98, 106; APA Br. at 3; Scerba Opp. Br. at 3-4.) American and the APA refused to negotiate with the Pilots, and on March 27, 2012, American moved for leave to reject the CBA (including Supplement B) under § 1113 of the Bankruptcy Code.[1] (Compl. ¶¶ 107-10; APA Br. at 3; Scerba Opp. Br. at 4; Ch. 11 Dkt. No. 2035: 3/27/12 Notice of § 1113 Motion.)[2]

---

[1]     "Contract rejection under § 1113 . . . allows one party, with the court's approval, to establish new terms that were not mutually agreed upon . . . ." <u>In re Nw. Airlines Corp.</u>, 483 F.3d 160, 171 (2d Cir. 2007) (emphasis omitted); <u>see</u> 11 U.S.C. § 1113(f).

[2]     References to "Ch. 11 Dkt." are to docket filings from American's Chapter 11 Bankruptcy Petition No. 11-15463, which were not attached to the parties' submissions. "'In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case <u>sub judice</u>.'" <u>Hawkins</u> v. <u>Tyree</u>, 483 B.R. 598, 599 n.3 (S.D.N.Y. 2012) (Peck, M.J.) (quoting <u>Ferrari</u> v. <u>Cnty. of Suffolk</u>, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011)); <u>see also</u>, <u>e.g.</u>, <u>In re Old Carco LLC</u>, 509 F. App'x 77, 79 (2d Cir. 2013) (court may take judicial notice of bankruptcy filings on motion to dismiss); <u>In re Howard's Express, Inc.</u>, 151 F. App'x 46, (continued...)

On March 30, 2012, plaintiff Larry Scerba, unrepresented by the APA, filed a class RLA grievance on behalf of the Pilots (the "Scerba Class Grievance") complaining that American had violated Supplement B.  (Compl. ¶¶ 139-40, 142; Scerba Opp. Br. at 6, 17.)[3]

On April 3, 2012, the Pilots filed objections to American's § 1113 motion, arguing that "American and APA have already violated the provisions of Supplement B during the Section 1113 negotiation process."  (APA Br. Ex. 1: Pilots 4/3/12 Obj. to § 1113 Motion at 2.)  The Pilots objected on the following bases:

> American Airlines, as part of its current Section 1113 motion, is proposing changes that would diminish the existing pay and/or benefit programs in a manner that would adversely affect pilots hired prior to November 1, 1983 (Supplement B pilot beneficiaries).  Through these proposals and resulting negotiations with APA, American Airlines has violated the procedural provisions of Supplement B by engaging in efforts to modify or eliminate Supplement B without consulting and negotiating with the covered pilots.  Moreover, American Airlines has also already violated Supplement B substantively by advising covered pilots that, if they retire now, they are no longer entitled to a lump-sum retirement option.

> These ongoing efforts to modify or eliminate Supplement B through this bankruptcy process, in the manner described herein, not only runs afoul of the

---

[2]    (...continued)
48 (2d Cir. 2005) (taking judicial notice of bankruptcy docket); In re F.C.C., 208 F.3d 137, 138 (2d Cir. 2000) (taking judicial notice of material filed in bankruptcy court); Sigmon v. Goldman Sachs Mortg. Co., 12 Civ. 3367, 2013 WL 5451410 at *3 (S.D.N.Y. Sept. 30, 2013) (taking judicial notice of "documentation produced in the underlying bankruptcy proceeding"); Manley v. Utzinger, 10 Civ. 2210, 2011 WL 2947008 at *1 n.1 (S.D.N.Y. July 21, 2011); In re Heating Oil Partners, No. 08-CV-1976, 2009 WL 5110838 at *2 n.5 (D. Conn. Dec. 17, 2009), aff'd, 422 F. App'x 15 (2d Cir. 2011); In re Driscoll, 379 B.R. 415, 421 (Bankr. D. Conn. 2008); First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 219 F. Supp. 2d 576, 584 (S.D.N.Y. 2002) (Kaplan, D.J.) (taking judicial notice of "[r]ecords on the bankruptcy court's electronic filing system" in deciding Rule 12(b)(6) motion), aff'd, 385 F.3d 159 (2d Cir. 2004); Colotone Liquidating Trust v. Bankers Trust N.Y. Corp., 243 B.R. 620, 622 n.2 (S.D.N.Y. 2000) (taking judicial notice of bankruptcy filings and court orders); Balanoff v. Glazier (In re Steffan), 97 B.R. 741, 746 (Bankr. N.D.N.Y. 1989).

[3]    Approximately 65 of the Pilots also filed individual grievances (the "Individual Grievances") without the APA's representation.  (Compl. ¶¶ 141-42; Scerba Opp. Br. at 6.)

requirements of 11 U.S.C. § 1113, but at the same time <u>these actions would expose</u> <u>[American] and the APA to hybrid duty of fair representation ("DFR") liability</u>.

(APA Br. Ex. 1: Pilots 4/3/12 Obj. to § 1113 Motion at 2-3, emphasis added; <u>see</u> APA Br. Ex. 2: Pilots 4/19/12 Reply Obj. to § 1113 Motion; APA Br. at 5 & n.3.)

In April and May 2012, United States Bankruptcy Judge Sean H. Lane held a trial on American's § 1113 motion.  (Compl. ¶ 113; APA Br. at 3; Scerba Opp. Br. at 4.)  Despite Supplement B's requirement that the APA "participate in defending the legality, validity, and enforceability of [Supplement B] in any judicial, administrative, or other proceeding," the APA failed to defend Supplement B in any way during the § 1113 trial.  (Compl. ¶¶ 4, 115-17, 156 & Ex. A: Supp. B § B.3; APA Br. at 3; Scerba Opp. Br. at 4.)

On June 26, 2012, while awaiting Judge Lane's § 1113 decision, American proposed a "'Last, Best and Final Offer'" to the APA including a provision stating that the "'APA need not agree to the abrogation of Supplement B, but shall not oppose any future [American] efforts to abrogate Supplement B.'"  (Compl. ¶ 120; <u>see also</u> Compl. ¶¶ 4, 119, 157; APA Br. at 3; Scerba Opp. Br. at 4.)  On June 27, 2012, the APA Board of Directors approved American's proposal as a tentative agreement.  (Compl. ¶¶ 121-22; APA Br. at 3; Scerba Opp. Br. at 4-5.)

On August 15, 2012, Judge Lane denied American's § 1113 motion without prejudice on grounds unrelated to the Pilots' objections.  <u>See</u> <u>In re AMR Corp.</u>, 477 B.R. 384, 394 (Bankr. S.D.N.Y. 2012).[4/]  Judge Lane rejected the Pilots' objections on the merits (APA Br. at 5-6), holding:

---

[4/]     Specifically, Judge Lane held:

> [T]he Court concludes that two of the proposed changes—the expansion in American's ability to furlough pilots and to use codesharing to expand American's network—are inconsistent with Section 1113's concept of necessity.  This is because these proposed changes would give American unrestricted use of furlough and
> (continued...)

Before the Trial, these Supplement B Pilots filed an objection to the Motion on grounds that American failed to negotiate in good faith. Specifically, they argue that the "sweeping" Section 1113 changes proposed by American violate the express terms of Supplement B, which prohibits any modification to the Supplement B Pilots' pension and benefits except in instances of "unanimous agreement between the parties and a majority of the [covered] pilots . . . ." The Supplement B Pilots have interpreted this provision to be a "'permanent guarantee' of employment and financial security for pre-1983 pilots." The Supplement B Pilots further argue that, in the absence of the majority consent of Supplement B pilots described above, any agreement between American and the APA to modify benefits would be a breach of the duty of fair representation by the APA and American.

. . . .

. . . [T]he Court overrules both objections on the merits for several reasons. As a threshold matter, there is nothing in Section 1113 itself that supports the notion that a collective bargaining right can exist in perpetuity. Indeed, the case law says otherwise. In [a 1992 case], the Second Circuit permitted debtors to reject an agreement containing a lifetime job guarantee for certain employees, sadly observing

> The typographers' union [asked the court] what such guarantees mean, if they are not honored. All but 15 of these employees, under the debtor's proposal, will lose their jobs over time. To this question there is no convincing answer except perhaps that nothing is forever today.

> Moreover, the underlying purpose of Section 1113 is to promote negotiations among the parties towards new collective bargaining agreements; the notion that these supplemental agreements exist in perpetuity is antithetical to Section 1113's purpose. The position of the Supplement B . . . Pilots that their rights cannot be changed is also inconsistent with Section 1113's call for equal sacrifice from all employees.

---

[4/]    (...continued)
> codesharing where such unfettered discretion has not been justified as necessary either in American's business plan or by the practices of American's competitors. Given the importance of these two specific issues in the context of American's overall proposal to the APA, the Court must deny the Motion as to the APA on the present record. Such a denial is without prejudice to American seeking relief in the future with a new proposal as to the APA that remedies these deficiencies.

In re AMR Corp., 477 B.R. at 394.

> Considering these objections against the backdrop of the proposal as a whole, the Court concludes that these supplemental agreements do not bar rejection of the APA collective bargaining agreement under Section 1113.

In re AMR Corp., 477 B.R. at 451, 453 (citations omitted, emphasis added).[5/]  American remedied the deficiencies identified by Judge Lane and renewed its § 1113 motion on August 17, 2012.  (APA Br. at 6; Ch. 11 Dkt. No. 4081: 8/17/12 Notice of Renewed § 1113 Motion.)

On August 20, 2012, American and the APA separately submitted comments in support of a proposed IRS regulation that would allow American to eliminate the lump-sum benefit payment option for the Pilots.  (Compl. ¶¶ 130-38, 158; APA Br. at 4; Scerba Opp. Br. at 5-6.)

On August 28, 2012, the Pilots filed objections to American's renewed § 1113 motion, arguing that, inter alia, American, "with the acquiescence and/or agreement of APA," sought "to abrogate Supplement B without prior negotiations with the Supplement B pilots" as required by the terms of Supplement B, American's "invitation to APA to abandon the interests of the Supplement B pilots exposes it to shared liability for the damages arising from the DFR breach," and American's bankruptcy does not "relieve[] the APA from its ongoing duty to fairly represent the Supplement B beneficiaries and honor both their substantive and procedural rights."  (APA Br. Ex. 3: Pilots 8/28/12 Obj. to Renewed § 1113 Motion at 2, 11-12.)

By Order dated September 5, 2012, Judge Lane granted American's renewed § 1113 motion, authorizing American to reject the CBA and Supplement B (Compl. ¶ 126; APA Br. at 4, 6; Scerba Opp. Br. at 5; Ch. 11 Dkt. No. 4293: 9/5/12 Order), and overruled the Pilots' objections in a September 13, 2012 decision (APA Br. at 6).  See In re AMR Corp., 478 B.R. 599, 610-11 (Bankr. S.D.N.Y. 2012).  The Pilots filed a Notice of Appeal on September 14, 2012 (APA Br. at

---

[5/]      Judge Lane held that, given his denial of the motion, "the question of fair representation [was] premature."  In re AMR Corp., 477 B.R. at 454 n.72.

6 & Ex. 4: 9/14/12 Pilots Notice of Appeal) and, on that same day, the APA also appealed on

unrelated grounds (Scerba Opp. Br. at 5 & Ex. A: 9/14/12 APA Notice of Appeal).[6]

On November 9, 2012, American and the APA reached an agreement in principle on

a new CBA that did not include Supplement B.  (Compl. ¶¶ 127, 144; APA Br. at 4, 7; Scerba Opp.

Br. at 7.)  As part of that agreement, the APA agreed to extinguish the Scerba Class and Individual

Grievances without the grievants' consent.  (Compl. ¶¶ 143-48, 159, 165; APA Br. at 4, 7; Scerba

Opp. Br. at 7.)  The APA Board of Directors approved the new CBA on November 16, 2012.

(Compl. ¶ 145; APA Br. at 4; Scerba Opp. Br. at 7.)  American's pilots voted to ratify the new CBA

on December 7, 2012.  (Compl. ¶ 127; APA Br. at 4; Scerba Opp. Br. at 7.)

On November 23, 2012, American moved for bankruptcy court approval of the

elimination of the lump-sum pension benefit payment option from the CBA ("Lump-Sum

Elimination Motion").  (APA Br. at 6-7; Ch. 11 Dkt. No. 5413: 11/23/12 Notice of Lump-Sum

Elimination Motion.)  The APA filed a response supporting the motion.  (Compl. ¶¶ 135-36; Ch. 11

Dkt. No. 5672: 12/12/12 APA Response in Support of Lump-Sum Elimination Motion.)

On December 7, 2012, American moved for bankruptcy court approval of the new

CBA and extinguishment of the Grievances ("CBA Approval and Grievance Motion").  (APA Br.

at 7; Ch. 11 Dkt. No. 5626: 12/7/12 Notice of CBA Approval and Grievance Motion.)

On December 12, 2012, the Pilots filed objections to the Lump-Sum Elimination

Motion.  (APA Br. at 7 & Ex. 5: Pilots 12/12/12 Obj. to Lump-Sum Elimination Motion.)  On

December 17, 2012, the Pilots filed objections to the CBA Approval and Grievance Motion.  (APA

Br. at 7-8 & Ex. 6: Pilots 12/17/12 Obj. to CBA Approval and Grievance Motion.)  At a hearing on

_____

[6]     The Pilots' appeal remains pending.  (APA Br. at 6, 9 n.4.)  The APA withdrew its appeal
        on December 17, 2012.  (Scerba Opp. Br. at 5, 11 & Ex. F: Stip. to Dismiss Appeals.)

December 19, 2012, Judge Lane rejected the Pilots' objections and granted American's motions, noting that the Pilots' arguments "stem from supplements to an old collective bargaining agreement that no longer exists and therefore does not provide any basis for denying the motion." (APA Br. at 8-9 & Ex. 7: 12/19/12 Tr. 69-72, 75-78.)[7]   On December 28, 2012, the Pilots appealed Judge Lane's decision on both motions; the appeals remain pending. (APA Br. at 9 n.4.)

**The Present Action**

        The Pilots filed their present Complaint in this Court on May 31, 2013, contending that the APA breached its duty of fair representation ("DFR") "in the context of the § 1113 bankruptcy proceedings and contract negotiations" (Dkt. No. 1: Compl. ¶ 155), and that the following claims constitute DFR breaches: (1) "APA's failure to defend the legality, validity, and enforceability of Supplement B in American's Chapter 11 bankruptcy, including the § 1113 negotiations and proceedings" (Compl. ¶ 156); (2) "APA's agreement not to oppose American's efforts to abrogate Supplement B" (Compl. ¶ 157); (3) "APA's support of American's elimination of the lump-sum distribution option, without seeking an exception for the Supplement B Pilots" (Compl. ¶ 158); and (4) "APA's agreement to extinguish the Scerba Grievance and all of the Individual Grievances without the consent of Plaintiff Scerba or any of the grievants who filed the Individual Grievances, and effectively deny access to the System Board of Adjustment" (Compl. ¶ 159).[8]

---

[7]    See also In re Nw. Airlines Corp., 483 F.3d at 171, 173 ("after a carrier has abrogated its CBA" under 11 U.S.C. § 1113, the abrogated "'agreement' has ceased to exist").

[8]    The Pilots assert a second cause of action for breach of their statutory right to arbitration under the RLA (Compl. ¶¶ 161-67), which is based on the same agreement to extinguish the Grievances alleged in the Pilots' DFR claim. (Compare Compl. ¶ 159; with Compl. ¶ 165: "As part of the tentative agreement reached between American and APA in November 2012, (continued...)

The APA moves to dismiss (Dkt. No. 13: Notice of Motion) arguing, <u>inter alia</u>, that the claims are time-barred by the six-month statute of limitations because the Pilots had actual knowledge, before December 1, 2012, of all of the breaches alleged in the May 31, 2013 Complaint. (Dkt. No. 14: APA Br. at 12-14; Dkt. No. 18: APA Reply Br. at 4-6.)  The Pilots respond that their claims are timely because the six-month limitations period did not begin to run until, at the earliest, the new CBA was ratified on December 7, 2012.  (Dkt. No. 17: Scerba Opp. Br. at 8-18.)

<u>ANALYSIS</u>

## I.     THE STANDARDS GOVERNING A MOTION TO DISMISS

### A.     The Twombly-Iqbal "Plausibility" Standard

In two decisions in 2007 and 2009, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in <u>Twombly</u>, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it <u>demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation</u>.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, <u>a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face</u>."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

---

[8]/     (...continued)
APA agreed to extinguish the Scerba Grievance, and all of the Individual Grievances, without consent of the grievants, effectively denying Plaintiffs access to the System Board of Adjustment to their detriment.")

Two working principles underlie our decision in <u>Twombly</u>.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  <u>Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice</u>.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  <u>Second, only a complaint that states a plausible claim for relief survives a motion to dismiss</u>.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007) (retiring the <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")).[9]

---

[9]     Accord, e.g., <u>Affinity LLC</u> v. <u>GfK Mediamark Research & Intelligence, LLC</u>, No. 13-1536-cv, --- F. App'x ----, 2013 WL 6284281 at *1 (2d Cir. Dec. 5, 2013); <u>Massena</u> v. <u>Bronstein</u>, No. 12-2017, --- F. App'x ----, 2013 WL 6067505 at *1 (2d Cir. Nov. 19, 2013); <u>Cancel</u> v. <u>Home Depot</u>, 488 F. App'x 520, 520 (2d Cir. 2012); <u>Spataro</u> v. <u>Glenwood Supply</u>, 479 F. App'x 403, 404 (2d Cir. 2012); <u>Starr</u> v. <u>Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 901 (2011); <u>Harris</u> v. <u>Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009); <u>Florio</u> v. <u>Canty</u>, 12 Civ. 8348, --- F. Supp. 2d ----, 2013 WL 3781549 at *2-3 (S.D.N.Y. July 22, 2013) (Peck, M.J.) (citing cases); <u>Mahoney</u> v. <u>Sony Music Entm't</u>, 12 Civ. 5045, 2013 WL 491526 at *4-5 (S.D.N.Y. Feb. 11, 2013) (Peck, M.J.); <u>Toto, Inc.</u> v. <u>Sony Music Entm't</u>, 12 Civ. 1434, 2012 WL 6136365 at *5 (S.D.N.Y. Dec. 11, 2012) (Peck,
(continued...)

Even after <u>Twombly</u> and <u>Iqbal</u>, the Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Bison Capital Corp.</u> v. <u>ATP Oil & Gas Corp.</u>, 10 Civ. 0714, 2010 WL 2697121 at *5 (S.D.N.Y. June 24, 2010) (Peck, M.J.) (quotations omitted), <u>report & rec. adopted</u>, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).[10]

### B.    Consideration of Documents Attached to the Complaint

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." <u>Vassilatos</u> v. <u>Ceram Tech Int'l, Ltd.</u>, 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing <u>Kopec</u> v. <u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).[11]  The Court,

---

[9]    (...continued)
M.J.), <u>report & rec. adopted</u>, 2013 WL 163826 (S.D.N.Y. Jan. 15, 2013); <u>Prime Mover Capital Partners L.P.</u> v. <u>Elixir Gaming Techs., Inc.</u>, 898 F. Supp. 2d 673, 683 (S.D.N.Y. 2012) (Kaplan, D.J.).

[10]   <u>Accord</u>, <u>e.g.</u>, <u>Florio</u> v. <u>Canty</u>, 2013 WL 3781549 at *3; <u>Tasini</u> v. <u>AOL, Inc.</u>, 851 F. Supp. 2d 734, 737 (S.D.N.Y.) ("The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"), <u>aff'd</u>, 505 F. App'x 45 (2d Cir. 2012); <u>Saunders</u> v. <u>Coughlin</u>, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting <u>Geisler</u> v. <u>Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980)).

[11]   <u>Accord</u>, <u>e.g.</u>, <u>Grant</u> v. <u>Cnty. of Erie</u>, No. 13-451-cv, --- F. App'x ----, 2013 WL 5645566 at *1 & n.1 (2d Cir. Oct. 17, 2013); <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006); <u>Aniero Concrete Co.</u> v. <u>N.Y.C. Constr. Auth.</u>, 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); <u>Six W. Retail Acquisition, Inc.</u> v. <u>Sony Theatre Mgmt. Corp.</u>, 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed.
(continued...)

however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  E.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . .").[12]

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d at 134 (citations omitted).  In this case, the documents that plaintiffs attached to their complaint may be considered on the motion to dismiss,

---

[11]      (...continued)
          R. Civ. P. 56.  See Fed. R. Civ. P. 12(b); Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000); Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

[12]      See also, e.g., Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561 (1992)); Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Florio v. Canty, 12 Civ. 8348, --- F. Supp. 2d ----, 2013 WL 3781549 at *3 (S.D.N.Y. July 22, 2013) (Peck, M.J.); In re Lehman Bros. Sec. & ERISA Litig., 903 F. Supp. 2d 152, 168-69 (S.D.N.Y. 2012) (Kaplan, D.J.) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 98); Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 11 Civ. 1980, 2012 WL 423350 at *2 (S.D.N.Y. Feb. 7, 2012); Maniolos v. United States, 741 F. Supp. 2d 555, 560 (S.D.N.Y. 2010) (Peck, M.J.), aff'd, 469 F. App'x 56 (2d Cir. 2012).

subject to the <u>Faulkner</u> v. <u>Beer</u> proviso.  <u>See</u>, <u>e.g.</u>, <u>Urena</u> v. <u>Am. Airlines, Inc.</u>, 152 F. App'x 63, 65

(2d Cir. 2005) (considering CBA between airline employer and union on motion to dismiss).

## II.    <u>THE STANDARDS GOVERNING THE TIMELINESS OF THE PILOTS' CLAIMS</u>

The parties agree that the Pilots' claims are subject to a six-month statute of

limitations.  (Dkt. No. 14: APA Br. at 12, 14; Dkt. No. 17: Scerba Opp. Br. at 8, 18; Dkt. No. 18:

APA Reply Br. at 2 n.1.)[13/]  They disagree, however, on the date the claims accrued: the APA argues

that the limitations period began to run on November 16, 2012 at the very latest, and as a result the

suit is time-barred (APA Br. at 12-13), while the Pilots counter that their claims accrued no earlier

than December 7, 2012, and therefore the suit is timely.  (<u>See</u> page 10 above.)

### A.    **There is no Bright-Line Rule for Determining the Date on Which a DFR Claim Accrued, Since the Limitations Period is Triggered by Actual or Constructive Knowledge of the Alleged Breach**

"A cause of action based on the duty of fair representation accrues when the union

members know or reasonably should know that a breach of that duty has occurred."  <u>Eatz</u> v. <u>DME</u>

<u>Unit of Local Union No. 3</u>, 794 F.2d 29, 33 (2d Cir. 1986); <u>accord</u>, <u>e.g.</u>, <u>Arnold</u> v. <u>1199 SEIU</u>, 420

F. App'x 48, 50-51 (2d Cir. 2011); <u>Urena</u> v. <u>Am. Airlines, Inc.</u>, 152 F. App'x 63, 65 (2d Cir. 2005);

<u>Ramey</u> v. <u>Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers</u>, 378 F.3d 269, 278 (2d Cir.

2004) ("[I]t now is well settled that the determination of the date of accrual turns on whether

'plaintiffs knew or reasonably should have known that . . . a breach <u>had</u> occurred.'" (quoting <u>Santos</u>

---

[13/]    See also, <u>e.g.</u>, <u>DelCostello</u> v. <u>Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 169-71, 103 S. Ct. 2281, 2293-94 (1983); <u>Arnold</u> v. <u>1199 SEIU</u>, 420 F. App'x 48, 50 (2d Cir. 2011); <u>Pozo</u> v. <u>J & J Hotel Co.</u>, 06 Civ. 2004, 2007 WL 1376403 at *21 (S.D.N.Y. May 10, 2007) (Peck, M.J.); <u>LaRue</u> v. <u>N.Y.C. Off-Track Betting Corp.</u>, 03 Civ. 0783, 2004 WL 2793195 at *8 (S.D.N.Y. Dec. 6, 2004); <u>Williams</u> v. <u>Local 1199, Drug Hosp. Union</u>, 97 Civ. 9200, 1999 WL 435152 at *3 (S.D.N.Y. June 24, 1999) (Chin, D.J.); <u>Waterman</u> v. <u>Transp. Workers' Union Local 100</u>, 8 F. Supp. 2d 363, 368 (S.D.N.Y. 1998), <u>aff'd</u>, 176 F.3d 150 (2d Cir. 1999).

15

v. Dist. Council of N.Y.C., 619 F.2d 963, 969 (2d Cir. 1980))); Arriaga-Zayas v. Int'l Ladies' Garment Workers' Union, 835 F.2d 11, 13 (1st Cir. 1987) ("The limitations clock is activated by knowledge, actual or constructive; it begins to tick when the challenged conduct comes to light."), cert. denied, 486 U.S. 1033, 108 S. Ct. 2016 (1988).[14]

"Once a plaintiff learns of his union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiffs 'cannot be treated as a continuing violation . . . of the limitations period.'" Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1492 (2d Cir. 1995); accord, e.g., Engelhardt v. Consol. Rail Corp., 756 F.2d 1368, 1370 (2d Cir. 1985) ("[T]he union's activity (or lack thereof) since the agreements were entered into does not constitute a continuing violation, thus tolling the six-month statute of limitations.").[15]

The Pilots seek to replace the knowledge standard by transforming fact-specific holdings into a bright-line rule based on an erroneous reading of the case law; they argue that "in the context of collective bargaining," the usual accrual test is subject to a caveat: "the limitation period begins to run no earlier than the date that the [CBA] contract is signed or ratified," even if the plaintiff had actual or constructive knowledge of the alleged breach before then.  (Dkt. No. 17: Scerba Opp. Br. at 8.)

---

[14]   See also, e.g., Pozo v. J & J Hotel Co., 06 Civ. 2004, 2007 WL 1376403 at *21 (S.D.N.Y. May 10, 2007) (Peck, M.J.); LaRue v. N.Y.C. Off-Track Betting Corp., 03 Civ. 0783, 2004 WL 2793195 at *8 (S.D.N.Y. Dec. 6, 2004); Williams v. Local 1199, Drug Hosp. Union, 97 Civ. 9200, 1999 WL 435152 at *3 (S.D.N.Y. June 24, 1999) (Chin, D.J.); Waterman v. Transp. Workers' Union Local 100, 8 F. Supp. 2d 363, 368 (S.D.N.Y. 1998), aff'd, 176 F.3d 150 (2d Cir. 1999).

[15]   See also, e.g., Pozo v. J & J Hotel Co., 2007 WL 1376403 at *21; Heller v. Consol. Rail Corp., No. 05-CV-1581, 2007 WL 607392 at *4 (N.D.N.Y. Feb. 20, 2007), aff'd, 331 F. App'x 766 (2d Cir. 2009); Hussein v. Sheraton N.Y. Hotel, 100 F. Supp. 2d 203, 207 (S.D.N.Y. 2000).

While some DFR claims have been held to accrue when a CBA is ratified, there is nothing in those cases to suggest that ratification is the earliest possible accrual date.  Rather, in each of the Pilots' cited cases (see Scerba Opp. Br. at 8-9), the issue was whether the claim accrued upon ratification or some later date, and the courts held plaintiffs knew of the breach by at least the ratification date, as opposed to, for example, the date on which the new policies were effectuated or plaintiffs were impacted.  See Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78, 111 S. Ct. 1127, 1136 (1991) (in deciding the correct standard for judicial review of a union's actions, not when the statute of limitations accrued, the Court stated that "the final product of the bargaining process may constitute evidence of a breach of duty" (emphasis added)); Addington v. US Airline Pilots Ass'n, 606 F.3d 1174, 1183 (9th Cir. 2010) ("Significantly, however, because the date the union advocated its position in negotiations fell within the six-month period in both cases, there would have been no need for the plaintiffs to argue that the claim did not accrue until effectuation of the policy."), cert. denied, 131 S. Ct. 908 (2011); Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1106 (2d Cir.) ("In this case, the period began to run, at the latest, as of the date the [union] ratified the allegedly violative agreement, . . . by which time the 1202 incoming flight attendants already had begun working for [the airline] and were aware of the terms of the Letter of Agreement." (emphasis added)), cert. denied, 502 U.S. 910, 112 S. Ct. 305 (1991); United Indep. Flight Officers, Inc. v. United Air Lines, Inc., 756 F.2d 1262, 1273 (7th Cir. 1985) ("The original injury occurred when [the airline] and [union] failed to reach agreement before the end of 1981.  A subsequent injury occurred by [plaintiff's] own allegations no later than June 24, 1982, when the Supplemental Agreement was signed." (emphasis added)); Merritt v. Int'l Ass'n of Machinists & Aerospace Workers, No. 06-CV-14342, 2008 WL 5784439 at *11 (E.D. Mich. Sept. 22, 2008) ("[P]laintiffs have offered no case law to support their claim that, even if court approval was required, the

limitations period commenced <u>any later than</u> the execution and ratification of the Agreement." (emphasis added)), <u>report & rec. adopted</u>, 2009 WL 880030 (E.D. Mich. Mar. 30, 2009), <u>aff'd</u>, 613 F.3d 609 (6th Cir. 2010).[16/]   The fact that some cases have held that the ratification date was the <u>latest</u> possible date on which those plaintiffs could have learned of the breach does not transform the knowledge standard into a bright-line rule; in the Second Circuit, a claim accrues when the plaintiff knows or reasonably should know of the breach, and this may occur before, after, or simultaneously with ratification, depending on the particular facts of each case.

    Similarly, the date on which a plaintiff knew or should have known of a union's DFR breach also may depend on whether the adequacy of the underlying representation is challenged. That is, a DFR claim based on the quality of a union's representation that was purporting to assist the plaintiff at a grievance or arbitration hearing will accrue later (<u>i.e.</u>, after the representation is

---

[16/]  The Pilots also cite <u>Bensel</u> v. <u>Allied Pilots Ass'n</u>, 271 F. Supp. 2d 616, 624 (D.N.J. 2003), <u>aff'd in part, rev'd in part</u>, 387 F.3d 298 (3d Cir. 2004), <u>cert. denied</u>, 544 U.S. 1018, 125 S. Ct. 1976 (2005), in support of their assertion that the limitations period begins to run no earlier than the ratification date.  (Scerba Opp. Br. at 9.)  For the reasons discussed in Part II.B.2 below, <u>Bensel</u> is inapposite.

complete)[17] than a claim based on a union's decision not to represent the plaintiff's interests at all, which will accrue when that decision is known.[18]

---

[17]    E.g., Kavowras v. N.Y. Times Co., 328 F.3d 50, 56 (2d Cir. 2003) ("We ruled that a claim accrued . . . when the adverse award was issued.  We reasoned that a plaintiff should not be compelled to sue her union for ineffective representation, nor should the court be compelled to adjudicate the asserted ineffectiveness, before the efficacy of the union's representation was revealed by the arbitrator's rendition of an adverse award.  Explaining that the plaintiff could not have been expected to bring the suit before issuance of a decision in the arbitration, we ruled that the suit was not untimely when filed."); Jelenic v. Campbell Plastics, No. 96-7064, 101 F.3d 687 (table), 1996 WL 335709 at *1 (2d Cir. June 18, 1996) ("[W]here a union represents its member during an arbitration, the cause of action does not accrue until an adverse award is made by the arbitrator."); Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 165 (2d Cir. 1989) ("[H]ere we deal . . . with a union purporting to fulfill its duty of fair representation throughout an arbitration hearing process.  In such circumstances, we will not attribute to an unsophisticated employee instant knowledge of tactical or legal errors made by her own advocate . . . .  Rather, the employee is entitled, during the hearing process, to trust in the abilities of her representative and 'reasonably believe[] the Union [is] proceeding in good faith,' at least until an adverse arbitral decision suggests otherwise.  Knowledge of the breach by the Union will not be attributed to [plaintiff] prior to the issuance of the award." (citation omitted)); King v. N.Y. Tel. Co., 785 F.2d 31, 35-36 (2d Cir. 1986).

[18]    See, e.g., Jelenic v. Campbell Plastics, 1996 WL 335709 at *1 ("'Where a union refuses or neglects to assist a union member . . . a breach of a duty by the union is apparent to the member at the time [the member] learns of the union action or inaction about which [the member] complains.'"); Buttry v. Gen. Signal Corp., 68 F.3d at 1492-93; Ghartey v. St. John's Queens Hosp., 869 F.2d at 165 ("Where a union refuses or neglects to assist a union member, decides to stop assisting a member, or acts against the interests of a member, a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains.  In such contexts, it would indeed be nonsensical to say that the member, left to go it alone or with the aid of a non-union representative, only learns of the union's breach later, when she suffers an adverse result.  Moreover, the concerns that warrant protecting an unsophisticated grievant from having to assess the ongoing performance of her union representative do not apply where she and the union have already taken on an adversarial posture." (citations omitted)); Santos v. Dist. Council of N.Y.C., 619 F.2d at 970; Verrilli v. Sikorsky Aircraft Corp., No. 03 CV 0541, 2005 WL 2491572 at *3 (D. Conn. Oct. 7, 2005) ("This constructive knowledge of the union's breach may occur when the claim to arbitration is still pending but the union has failed to pursue it."), aff'd, 221 F. App'x 8 (2d Cir. 2007); DeRay v. Larson, No. 02-CV-2139, 2004 WL 2211939 at *6 (D. Conn. Sept. 29, 2004) ("'Where a union refuses or neglects to assist a union member, decides to stop assisting a union member, or acts against
(continued...)

**B.**    **The DFR Limitations Period May be Triggered Before the Consequences of the Alleged Breach are Certain**

Several of the Pilots' arguments urge that their claims did not accrue until there remained no possibility that their position could be vindicated.[19] This assertion—that the limitations period is tolled until the resulting harm is absolutely certain—is another attempt to impose a bright-line rule despite the Second Circuit's caselaw imposing a fact-based knowledge standard.

**1.**    **The Limitations Period is not Tolled Until Harm is Beyond All Doubt**

The "question of how certain it must be that harm will be caused by a union's breach in order to trigger the statute of limitations" is a "difficult and unsettled question." Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 280 n.5 (2d Cir. 2004). "[T]here must be some likelihood that a harm will result from a union's breach before a member may file

---

[18]    (...continued)
the interests of a member, a breach of duty by the union is apparent to the member at the time [he] learns of the union action or inaction about which [he] complains.'  Thus, the first question is: when did [plaintiff] know, or should [plaintiff] have known, that [the unions] were acting in a manner adverse to his interests, or failing to act in his favor?" (citation omitted)).

[19]    See Dkt. No. 17: Scerba Opp. Br. at 11-12 ("[I]n the case of the Plaintiffs' claim that APA failed to defend Supplement B in the § 1113 proceedings, leading to abrogation of the contract, Plaintiffs continue to have 'rays of hope' while APA appealed the Bankruptcy Court's September 5, 2012 abrogation order.  Those 'rays of hope' were not extinguished until the union membership ratified a new contract on December 7, 2012, and APA withdrew its § 1113 appeals on December 27, 2012."); id. at 16 ("[A]ccrual did not occur until, at the earliest, the American-APA contract was ratified on December 7, 2012, and APA's appeal that would have had the effect of restoring Supplement B had been withdrawn on December 27, 2012."); id. at 16-17 ("Plaintiffs' claim regarding the lump-sum option . . . accrued upon court approval of the motion to eliminate the lump-sum option. . . . Until this time, and until the December 27, 2012 withdrawal of its appeal of the Bankruptcy Court's § 1113 decision, APA was continuing to litigate for the restoration of the entire contract."); id. at 18 ("[T]he tentative agreement to extinguish the Scerba Grievance did not take effect until the ratification of the new contract on December 7, 2012. . . . Thus, Plaintiffs' claim regarding APA's agreement to extinguish the Scerba Grievance accrued no earlier than ratification of the contract on December 7, 2012."); see also pages 22, 26, 29, 31-32 below.

suit," but the outcome "need not be beyond all doubt for a cause of action to accrue," and the limitations period "is triggered even if it is not absolutely certain that a union member will be harmed by a breach." Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d at 278, 280 n.5 (citing Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1492-93 (2d Cir. 1995) (holding that cause of action accrued when union manifestly abandoned the interests of its members)); see, e.g., Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 164 (2d Cir. 1989) ("We cited the federal policy favoring 'prompt resolution of disputes' in holding that the plaintiff could not wait until all such remedies were exhausted . . . . '[W]hile . . . a breach at only one level of union organization does not preclude all possibility that efforts at other levels might eventually achieve success, [the breach was] sufficiently serious to make ultimate compliance unlikely.'" (quoting Santos v. Dist. Council of N.Y.C., 619 F.2d 963, 969 (2d Cir. 1980) ("[W]e do not think the time of accrual should be deferred until it is clear that none of the internal union mechanisms will achieve success. . . . [W]e think the cause of action accrued no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained."))); DeRay v. Larson, No. 02-CV-2139, 2004 WL 2211939 at *6 (D. Conn. Sept. 29, 2004) ("The claim accrues 'even if some possibility of nonjudicial enforcement remained.'"); Dittman v. Gen. Motors Corp.–Delco Chassis Div., 941 F. Supp. 284, 287-88 (D. Conn. 1996), aff'd, 116 F.3d 465 (2d Cir. 1997). Conversely, the statute of limitations may be tolled "in the face of substantial doubt as to the likelihood of an ensuing harm." Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d at 278.[20]

---

[20]     One type of alleged harm that courts have held is insufficiently certain to trigger the limitations period is the harm resulting from a DFR breach in the context of an arbitration where the union actually attempted to represent the plaintiff and act in the plaintiff's interests

(continued...)

### 2.	The Second Circuit has not Adopted the Third Circuit's "Rays of Hope" Doctrine

The Pilots cite Bensel v. Allied Pilots Ass'n, 271 F. Supp. 2d 616 (D.N.J. 2003), aff'd in part, rev'd in part, 387 F.3d 298 (3d Cir. 2004), cert. denied, 544 U.S. 1018, 125 S. Ct. 1976 (2005), in support of their assertion that it is "'irrelevant'" when the Pilots had actual or constructive knowledge of the APA's alleged breaches because the Pilots "continue[d] to have 'rays of hope' while APA appealed the Bankruptcy Court's September 5, 2012 abrogation order," and thus the claims did not accrue until all their "'rays of hope'" were extinguished.  (Dkt. No. 17: Scerba Opp. Br. at 9, 11-12.)

Bensel relies on the Third Circuit's "rays of hope" doctrine.  Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 305-06 (3d Cir. 2004), cert. denied, 544 U.S. 1018, 125 S. Ct. 1976 (2005). However, "the 'rays of hope' doctrine is confined to the Third Circuit" and "[n]o court outside that circuit has adopted the doctrine." Merritt v. Int'l Ass'n of Machinists & Aerospace Workers, No. 06-CV-14342, 2008 WL 5784439 at *12 (E.D. Mich. Sept. 22, 2008), report & rec. adopted, 2009 WL 880030 (E.D. Mich. Mar. 30, 2009), aff'd, 613 F.3d 609 (6th Cir. 2010). The "rays of hope" doctrine does not apply in the Second Circuit and thus Bensel does not support the Pilots' position here. (See 2d Cir. cases cited in Parts II.A and II.B.1 above.)

---

[20]/	(...continued)
(as distinguished from cases in which the union declined to pursue the arbitration).  In such cases, the claim does not accrue until the arbitration decision is issued, since an outcome that favored the plaintiff would defeat a claim that the representation was unfair.  (See page 18 n.17 above.)

**III.      THE PILOTS' CLAIMS SHOULD BE DISMISSED AS TIME-BARRED**

The Pilots filed their complaint on May 31, 2013.  (Dkt. No. 1: Compl.)  Under the

six-month statute of limitations, any claims that accrued before December 1, 2012 are time-barred.

The Pilots claim four different DFR breaches and the Court considers each in turn.

**A.      The APA's Failure to Defend Supplement B**

The Pilots first allege that "APA's failure to defend the legality, validity, and

enforceability of Supplement B in American's Chapter 11 bankruptcy, including the § 1113

negotiations and proceedings," constitutes a breach of the APA's duty of fair representation.  (Dkt.

No. 1: Compl. ¶ 156; see page 9 above.)  The APA argues that the limitations period began to run

on this DFR claim in April or May 2012, when the APA failed to defend Supplement B during the

Bankruptcy Court trial on American's § 1113 abrogation motion.  (Dkt. No. 14: APA Br. at 13; Dkt.

No. 18: APA Reply Br. at 4.)  The Pilots argue that the limitations period began to run either on

December 7, 2012 when the new CBA was ratified, or December 27, 2012 when the APA withdrew

its appeal of Judge Lane's § 1113 decision.  (Dkt. No. 17: Scerba Opp. Br. at 11-12.)[21/]

It is undisputed that the Pilots knew of the APA's failure to defend Supplement B

prior to December 1, 2012.  The Pilots admit that they were aware of the APA's conduct when it

---

[21/]    The Pilots claim that the APA's § 1113 appeal is relevant, even though its grounds were
unrelated to the Piltos' claims, because it technically appealed the bankruptcy court's entire
order.  (Scerba Opp. Br. at 11.)  The Pilots' argument regarding the APA's appeal is
essentially an assertion of the "rays of hope" doctrine, which has not been adopted in the
Second Circuit.  (See Part II.B.2 above.)  In any event, the argument is meritless as the APA
clearly did not appeal the bankruptcy court's determination on any basis that would indicate
it supported the Pilots' position or intended to defend Supplement B.  See, e.g., Emory v.
United Air Lines, Inc., 720 F.3d 915, 931-32 (D.C. Cir. 2013), petition for cert. filed, --
U.S.L.W. ---- (Nov. 12, 2013) (No. 13-597); Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1493
(2d Cir. 1995) ("[T]he International Union, appearing only as a witness for other parties at
the arbitration hearing, did not 'purport to fulfill its duty' of representing the plaintiffs.").

occurred in April and May 2012.  (See page 5 above.)  Therefore, the Pilots had the actual

knowledge required to trigger the limitations period as early as April-May 2012.  E.g., Urena v. Am.

Airlines, Inc., 152 F. App'x 63, 65 (2d Cir. 2005) ("The district court correctly found, based upon

[plaintiff's] complaint and the exhibits referenced therein, that [plaintiff] reasonably knew of his

rights and the underlying facts forming the basis of this action . . . when his letters requesting

[union] intervention in his appeal went unanswered by the union."); Ramey v. Dist. 141, Int'l Ass'n

of Machinists & Aerospace Workers, 378 F.3d 269, 279-80 (2d Cir. 2004) ("[T]he cause of action

accrued on the date on which performance was due, namely the date on which [the union] advocated

a position on the seniority issue to" the airline.); Holcombe v. US Airways Grp., Inc., Nos. 03-cv-

4785, 08-cv-1593, --- F. Supp. 2d ----, 2013 WL 5525686 at *8 (E.D.N.Y. Sept. 30, 2013) ("[T]o

the extent Plaintiff argues that it is impossible to determine when she first learned of the Union's

failure to . . . take an adversarial position against [the airline], the court finds that Plaintiff would

likely have been aware of these issues by . . . the date of the evidentiary hearing . . . ."); Silva v.

Peninsula Hotel, 509 F. Supp. 2d 364, 390 (S.D.N.Y. 2007) ("Plaintiff also testified that as of . . .

the final day of a two-day hearing . . . , he had concluded that 'nothing was going to be done' about

his [] complaints. . . . In light of Plaintiff's testimony, . . . Plaintiff's claim accrued on [the date of

the hearing], and is thus time-barred . . . .").[22]

_____

[22]    See, e.g., Arnold v. 1199 SEIU, 420 F. App'x 48, 51 (2d Cir. 2011) (Plaintiff's "complaint
        alleged that the Union breached its 'statutory duty of fair representation by the manner in
        which it handled [plaintiff's] grievance.'  Thus, [plaintiff's] hybrid claim accrued when he
        'knew or reasonably should have known' that the Union failed to fairly 'handle' his
        grievance."); Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 68 (2d Cir. 1995); Metz v.
        Tootsie Roll Indus., Inc., 715 F.2d 299, 303-04 (7th Cir. 1983), cert. denied, 464 U.S. 1070,
        104 S. Ct. 976 (1984); Persaud v. Local 340A United, 05 Civ. 5284, 2006 WL 2381844 at
        *2-3 (S.D.N.Y. Aug. 15, 2006).

Further, the Pilots knew of this breach when they filed objections with the bankruptcy court in April and August 2012, alleging that the APA's failure to defend Supplement B constituted a DFR breach.  (APA Br. at 13 n.5 & Ex. 3: Pilots 8/28/12 Obj. to Renewed § 1113 Motion at 11-12 ("invitation to APA to abandon the interests of the Supplement B pilots exposes it to shared liability for the damages arising from the DFR breach" and "there is nothing about [American's] bankruptcy that relieves the APA from its ongoing duty to fairly represent the Supplement B beneficiaries"); APA Br. Ex. 1: Pilots 4/3/12 Obj. to § 1113 Motion at 3 ("efforts to modify or eliminate Supplement B through this bankruptcy process . . . expose [American] and the APA to hybrid duty of fair representation [] liability"); see also pages 4-7 above.)  By complaining in April and August 2012 of the precise DFR breach alleged here, the Pilots admitted that they knew of the breach at that time, triggering the limitations period.  E.g., Arnold v. 1199 SEIU, 420 F. App'x at 51 (plaintiff's "own complaint stated that the issue of disproportionate workload had been raised during the grievance proceedings in May 2007," thus plaintiff "was aware of his purportedly disproportionate workload at the latest in May 2007"); Kavowras v. N.Y. Times Co., 328 F.3d 50, 55 (2d Cir. 2003) (DFR claim accrued by date of NLRB charge in which plaintiff "alleged in a general manner the same misconduct by the Union which he charged in his complaint," establishing "that he had actual knowledge of the breach by" that date); Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d at 68 ("As evidenced by his . . . letter . . . in which he reported that he had been terminated 'without the union so much as lifting a single finger in my defense, up to and including this day,' [plaintiff] was well aware of the Union's failure to take action on his termination."); Perez v. N.Y.'s Health & Human Serv. Union 1199/SEIU, 08 Civ. 7940, 2009 WL 2611940 at *3 (S.D.N.Y. Aug. 25, 2009) (Plaintiff "knew or should have known of the alleged breach when she filed her Article 78 complaint . . . . The Affirmation . . . , filed in support of [plaintiff's] Article 78 complaint, highlights precisely the

same issues that [plaintiff] now claims should have been addressed by the Union."); Smyj v. Consol. Rail Corp., 81 Civ. 7224, 1986 WL 1444 at *3 (S.D.N.Y. Jan. 30, 1986) ("By this letter, plaintiffs' counsel charged defendants with the precise wrongdoing with which they are charged in the first count of the amended complaint.  Therefore, it appears that plaintiffs knew the facts giving rise to their first cause of action by [the date of the letter] and the statute of limitations expired six months later . . . .").[23]

---

[23]    See, e.g., Arriaga-Zayas v. Int'l Ladies' Garment Workers' Union, 835 F.2d 11, 13 (1st Cir. 1987) ("[T]he plaintiffs' own filings place them snugly within the tightest of corsets.  They plainly knew of the [union's] purported wrongdoing no later than . . . [the] date they filed an elaborate 'informative motion' with the [labor board], citing . . . the ill-fitting ways of the union. . . . Having spied the wrongdoing, the aggrieved workers were bound to act upon this knowledge in a timely fashion, that is, to sue within the six month limitations period or forever hold their peace."), cert. denied, 486 U.S. 1033, 108 S. Ct. 2016 (1988); Merritt v. Int'l Ass'n of Machinists & Aerospace Workers, No. 06-CV-14342, 2008 WL 5784439 at *13 (E.D. Mich. Sept. 22, 2008) ("Plaintiffs offer no argument . . . to suggest that they were not well aware of any breaches of the union's duty of fair representation in connection with the Accretion Agreement.  On the contrary, by their own accounts plaintiffs immediately and repeatedly complained about the terms of the Accretion Agreement . . . ."), report & rec. adopted, 2009 WL 880030 (E.D. Mich. Mar. 30, 2009), aff'd, 613 F.3d 609 (6th Cir. 2010); see also, e.g., Mandavia v. Columbia Univ., 912 F. Supp. 2d 119, 134-35 (S.D.N.Y. 2012) (where plaintiff alleged "breach of duty based on [union's] alleged deficiencies or malfeasance in representing and advising him during the negotiations with [the employer] leading to the Agreement," DFR claim accrued by date of NLRB charge "demonstrat[ing] actual knowledge of the alleged breach of his union's duty of fair representation"); DeRay v. Larson, No. 02-CV-2139, 2004 WL 2211939 at *7 (D. Conn. Sept. 29, 2004) (Plaintiff "wrote a letter . . . giving notice of his intent to file suit. . . . [Plaintiff] admitted that he intended to base the lawsuit referred to in the . . . letter on the same grounds as the instant lawsuit. . . . It appears from this admission that [plaintiff] actually knew facts that would form the basis for a claim that [the unions] were in breach of their duty of fair representation by failing to act . . . ."); Robarge v. Potter, No. 01 CV 0417, 2002 WL 32061800 at *8 (E.D.N.Y. Mar. 14, 2002) ("According to Plaintiff's statements during his deposition, he was completely aware of the Union's withdrawal of his grievance prior to arbitration . . . and he . . . reasserted his understanding of this fact in a letter to his state senator . . . .  Such statements clearly indicate that Plaintiff knew of the ultimate consequences of the Union's failures, and thus . . . even if Plaintiff believed that the Union might still help him in some way . . . his claim had still accrued . . . ." (citation omitted)).

The Court therefore concludes that the Pilots' DFR claim based on the APA's failure to defend Supplement B in the bankruptcy proceedings accrued as early as April-May 2012 but in any event before December 1, 2012, and thus should be dismissed as time-barred.

> **B.**    **The APA's Agreement not to Oppose Supplement B's Abrogation**

The Pilots next allege that the "APA's agreement not to oppose American's efforts to abrogate Supplement B" constitutes a DFR breach.  (Dkt. No. 1: Compl. ¶ 157; see page 9 above.)  The APA argues that the limitations period began to run on this portion of the claim when the APA Board of Directors approved the agreement on June 27, 2012.  (Dkt. No. 14: APA Br. at 13; Dkt. No. 18: APA Reply Br. at 4-5.)  The Pilots do not dispute that they knew of the agreement in June 2012, but they argue it was merely an announcement of the APA's intention to breach its duty in the future, which is insufficient to trigger the statute of limitations, and thus the claim did not accrue until December 7 or 27, 2012, when the new CBA was ratified or the APA withdrew its § 1113 appeal, respectively.  (Dkt. No. 17: Scerba Opp. Br. at 12-16.)

A union's announcement of its intention to breach its duty in the future usually does not trigger the limitations period.  E.g., Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 278 (2d Cir. 2004) ("We have never held that a breach occurs when a union announces an intention, even if it does so unequivocally, to advocate against the interests of its members in the future.  Rather, we have held that the breach occurs when the union acts against the interests of its members."); see, e.g., Addington v. US Airline Pilots Ass'n, 606 F.3d 1174, 1182-83 (9th Cir. 2010), cert. denied, 131 S. Ct. 908 (2011).  In this case, however, the APA did not merely announce its intention not to defend Supplement B; rather, according to the Pilots' own allegations, the APA acted against the Pilots' interests by failing to defend Supplement B during the bankruptcy proceedings.  (See pages 4-7 above.)  The Pilots admit that they knew of this alleged breach when

they complained of it in their August 28, 2012 objections to the bankruptcy court, in which they specifically identified the June 2012 agreement as a basis for DFR liability.  (See page 7 above; APA Br. at 13 n.5; APA Reply Br. at 4-5; see also cases cited at pages 24-25 & n.23 above.)

Accordingly, since the APA's agreement not to oppose Supplement B's abrogation did not merely announce future intentions, but instead memorialized and notified the Pilots of actions (or inaction) that the APA actually took, the claim accrued by June 2012.  See, e.g., Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1492-93 (2d Cir. 1995) ("At the . . . union meeting, [the union representative] stated unequivocally that the plaintiffs had no rights under the supplemental agreement, and that the International Union would do nothing for them.  In their depositions, both plaintiffs conceded that when they left that meeting they both knew that the International Union would not press their rights under the supplemental agreement.  Thus, on [the date of the meeting], plaintiffs were aware of . . . the International Union's breach of its duty of fair representation. . . . [H]ere, the International Union 'manifestly' opposed and rejected plaintiffs' interests by announcing several months before arbitration that it did not believe the plaintiffs had a right to transfer, and that the International Union would not press any such rights.  And the International Union, appearing only as a witness for other parties at the arbitration hearing, did not 'purport to fulfill its duty' of representing the plaintiffs.  Accordingly, we hold that the plaintiffs' cause of action accrued on [the date of the meeting], and that the plaintiffs' claim, filed over 20 months later, was therefore time-barred."); Propst v. Ass'n of Flight Attendants, 546 F. Supp. 2d 14, 21-22 (E.D.N.Y. 2008) ("Plaintiffs knew or reasonably should have known of the defendants' breach in December 2002, when [the airline] and [the union] entered into the agreement . . . providing that [the airline] 'may operate MDA as a separate division within mainline.' . . . [T]he agreement provided plaintiffs actual notice that defendants had rendered a significant bargaining point as to the corporate form as

irrelevant and that [the union] had taken a negotiating position adverse to their interests. . . . [P]laintiffs knew that defendants entered into the agreement on their behalf and that any amendment would affect their rights under the CBA . . . .  If, as plaintiffs allege, they were technically recalled under the CBA by working for a division of the mainline carrier, the December 2002 agreement provided them with actual notice that defendants had violated the terms of the CBA by agreeing to inferior wages and benefits that were not contingent on [the] corporate form."), aff'd, 330 F. App'x 304 (2d Cir. 2009); Persaud v. Local 340A United, 05 Civ. 5284, 2006 WL 2381844 at *2 (S.D.N.Y. Aug. 15, 2006) ("[C]ounsel to the defendant [union] advised the plaintiff, in writing, that . . . the union would not oppose [the employee's] petition. . . . As a result, the union did not oppose the petition . . . .  The Court finds that [plaintiff] knew or should have known that the breach of the duty of fair representation alleged to have occurred in the instant case happened on or about [the date of counsel's writing].  Therefore, he had six months from that point to commence this action.").[24/]

The Court concludes that the Pilots' DFR claim based on the APA's agreement not to oppose Supplement B's abrogation accrued by June 2012 and in any event before December 1, 2012, and thus should be dismissed as time-barred.

---

[24/]    See also, e.g., Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d at 278 (a DFR claim accrues "when the union acts against the interests of its members"); Holcombe v. US Airways Grp., Inc., Nos. 03-cv-4785, 08-cv-1593, --- F. Supp. 2d ----, 2013 WL 5525686 at *8 (E.D.N.Y. Sept. 30, 2013) (claim accrued when plaintiffs knew of union's "failure to take an adversarial position against" the airline); Musto v. Transp. Workers Union of Am., 339 F. Supp. 2d 456, 459, 463 (E.D.N.Y. 2004) (claim accrued when airline and union signed agreement "in which they agreed to discontinue" certain classifications); Dittman v. Gen. Motors Corp.–Delco Chassis Div., 941 F. Supp. 284, 286, 288 (D. Conn. 1996) ("Plaintiffs claim that in March 1994 they realized that [the employer] and [union] had entered into a plant closing agreement [that] . . . ma[de] generous early retirement plans available to employees who were over age fifty, but not to employees between ages forty and fifty. . . . Since . . . plaintiffs learned in March 1994 that [the union] had allegedly made 'secret agreements' with [the employer], the statute of limitations began to run at that time."), aff'd, 116 F.3d 465 (2d Cir. 1997).

C.        **The APA's Support for the Lump-Sum Distribution Elimination**

The Pilots next allege that "APA's support of American's elimination of the lump-sum distribution option, without seeking an exception for the Supplement B Pilots," constitutes a DFR breach.  (Dkt. No. 1: Compl. ¶ 158; see page 9 above.)  The APA argues that the limitations period began to run on this claim when the APA on August 20, 2012 filed comments in support of the proposed IRS regulation without exception for the Pilots.  (Dkt. No. 14: APA Br. at 13; Dkt. No. 18: APA Reply Br. at 5-6.)  The Pilots do not dispute that they knew of the APA's action on August 20, 2012, but they nevertheless argue that the claim did not accrue until Judge Lane "approve[d] the amendment of the Pilot Pension Plan, eliminating the lump-sum distribution option," on December 19, 2012.  (Dkt. No. 17: Scerba Opp. Br. at 16-17.)

The standard is clear that knowledge of the breach is the trigger, and here, the alleged breach is the APA's "support of American's elimination of the lump-sum distribution option."  Thus, the limitations period was triggered when the Pilots knew that the APA supported the elimination. See, e.g., Arnold v. 1199 SEIU, 420 F. App'x 48, 51 (2d Cir. 2011); Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 278-80 (2d Cir. 2004) ("[T]he breach occurs when the union acts against the interests of its members. . . . Applying this principle to the case at bar, the cause of action accrued on the date on which performance was due, namely the date on which [the union] advocated a position" to the airline.); Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995) (DFR claim accrued when plaintiffs were on notice that union "'manifestly' opposed and rejected plaintiffs' interests"); Holcombe v. US Airways Grp., Inc., Nos. 03-cv-4785, 08-cv-1593, --- F. Supp. 2d ----, 2013 WL 5525686 at *8 (E.D.N.Y. Sept. 30, 2013) (claim accrued when plaintiffs knew of union's "failure to take an adversarial position against" airline); Emory v. United Air Lines, Inc., 821 F. Supp. 2d 200, 234 (D.D.C. 2011) ("'[T]he action accrue[d] when the

plaintiff[s] initially learn[ed] (or should have learned)' of the [union's] interpretation of the [regulation]. Here, the plaintiffs should have known what the [union's] position was concerning its interpretation of the [regulation] by . . . [the date on which they] discussed it with the" union. (citation omitted)), aff'd, 720 F.3d 915 (D.C. Cir. 2013), petition for cert. filed, -- U.S.L.W. ---- (Nov. 12, 2013) (No. 13-597); Propst v. Ass'n of Flight Attendants, 546 F. Supp. 2d 14, 21 (E.D.N.Y. 2008) (claim accrued when plaintiffs had "actual notice that defendants had rendered a significant bargaining point . . . irrelevant and that [the union] had taken a negotiating position adverse to their interests"), aff'd, 330 F. App'x 304 (2d Cir. 2009); DeRay v. Larson, No. 02-CV-2139, 2004 WL 2211939 at *6, *10 (D. Conn. Sept. 29, 2004).[25]

According to their own allegations, the Pilots knew that the APA supported the lump-sum elimination on August 20, 2012, and thus the claim accrued by that date. This result is not changed by the APA's continued support of the lump-sum elimination after August 2012, including in its response to American's Lump-Sum Elimination Motion. (Ch. 11 Dkt. No. 5672: 12/12/12 APA Response in Support of Lump-Sum Elimination Motion.) The Second Circuit has rejected the concept of a continuing violation toll of the DFR limitations period. See, e.g., Buttry v. Gen. Signal

---

[25]   The Pilots cite no authority to support their argument that this portion of the DFR claim did not accrue until the bankruptcy court granted American's Lump-Sum Elimination Motion. (See Scerba Opp. Br. at 17.) The Court rejects the assertion that the ordinary accrual rule is altered by the bankruptcy court's ultimate approval of American's application. See Merritt v. Int'l Ass'n of Machinists & Aerospace Workers, No. 06-CV-14342, 2008 WL 5784439 at *11 (E.D. Mich. Sept. 22, 2008) ("Assuming that court approval was required, this requirement is nothing more than a condition precedent. And plaintiffs have cited to no case suggesting that the existence of [a] condition precedent alters the ordinary rule of accrual for DFR claims."), report & rec. adopted, 2009 WL 880030 (E.D. Mich. Mar. 30, 2009), aff'd, 613 F.3d 609 (6th Cir. 2010); cf., e.g., Bondurant v. Air Line Pilots Ass'n, Int'l, 679 F.3d 386, 391-92 & n.4 (6th Cir. 2012) (claim accrued when "plaintiffs received formal notice of the Master Executive Council's decision to reject their appeals on . . . a date that falls within the scope of the limitations period" not, for example, on "the effective date of the Bankruptcy Restructuring Agreement," which was outside the limitations period).

Corp., 68 F.3d at 1492; Engelhardt v. Consol. Rail Corp., 756 F.2d 1368, 1370 (2d Cir. 1985) ("[T]he union's activity (or lack thereof) since the agreements were entered into does not constitute a continuing violation, thus tolling the six-month statute of limitations."); Emory v. United Air Lines, Inc., 821 F. Supp. 2d at 233 & n.26 (limitations period for DFR claim based on union's interpretation of a regulation was not tolled by union "communicating with members of Congress and the FAA to promote its interpretation" or "filing a brief as amicus curiae . . . in which the [union] promoted the same interpretation" because union was merely "reaffirming their prior position regarding the interpretation"); Eatz v. DME Unit of Local 3, No. 83 CV 792, 1987 WL 18168 at *3 (E.D.N.Y. Sept. 23, 1987) ("'Plaintiffs were damaged, at the latest, . . . when they realized (or should have realized) that their . . . rights had been impaired.  No further acts by the unions or company defendants are necessary to further complete or amplify such damages.'"); see also cases cited at page 15 & n.15 above.

The Court concludes that the Pilots' DFR claim based on the APA's support for the lump-sum elimination accrued by August 2012 but in any event before December 1, 2012, and thus should be dismissed as time-barred.

### D.    The APA's Agreement to Extinguish the Grievances Without Consent

Finally, the Pilots allege that "APA's agreement to extinguish the Scerba Grievance and all of the Individual Grievances without the consent of Plaintiff Scerba or any of the grievants who filed the Individual Grievances, and effectively deny access to the System Board of Adjustment," constitutes a DFR breach and also violated the Pilots' RLA rights. (Dkt. No. 1: Compl. ¶¶ 159, 165-67; see page 9 above.)  The APA argues that the limitations period began to run on this claim when the APA Board of Directors agreed to the extinguishment of the Grievances on November 16, 2012.  (Dkt. No. 14: APA Br. at 13; Dkt. No. 18: APA Reply Br. at 6.)  The Pilots

argue that the limitations period began to run on December 7, 2012, when American's pilots voted

to ratify the new CBA which eliminated the Grievances.  (Dkt. No. 17: Scerba Opp. Br. at 17-18.)

   The claim accrued when the Pilots knew of the APA's decision to extinguish the

Grievances.  (See cases cited at pages 27-28 & n.24 above.)  The Pilots expressly allege that the

decision was first made on November 9 and 16, 2012 (see page 8 above), and since the Pilots do not

dispute their knowledge of the decision at that time, the claim accrued in November 2012.  E.g.,

Arnold v. 1199 SEIU, 420 F. App'x 48, 51 (2d Cir. 2011); Urena v. Am. Airlines, Inc., 152 F. App'x

63, 65 (2d Cir. 2005) ("Because the [union's] alleged breach was grounded in its failure to pursue

a grievance, [plaintiff's] claim accrued when he had notice that the union was not going to take

action."); Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 68 (2d Cir. 1995) ("Even if [plaintiff]

entertained hopes of future representation by the Union, he knew that it had done nothing . . . to

pursue his grievance against the [employer].  This knowledge was sufficient to start the statute of

limitations running.").[26]

   The Court concludes that the Pilots' claims based on the extinguishment of the

Grievances accrued in November 2012, and thus should be dismissed as time-barred.[27]

---

[26] See also, e.g., Bondurant v. Air Line Pilots Ass'n, Int'l, 679 F.3d 386, 391-92 & n.4 (6th Cir. 2012); Roberts v. Potomac Elec. Power Co., No. 93-7211, 52 F.3d 1123 (table), 1995 WL 225688 at *3 (D.C. Cir. Mar. 22, 1995); DeRay v. Larson, No. 02-CV-2139, 2004 WL 2211939 at *3, *8, *10 (D. Conn. Sept. 29, 2004) ("[I]t is clear that [the union representative] told [plaintiff] that he could not pursue a grievance for [plaintiff].  Thus, [plaintiff] had actual knowledge that his cause of action for breach of the Union's duty of fair representation had accrued.  This knowledge started the clock on [plaintiff's] six-month statute of limitations. . . . [Plaintiff's] argument that the statute of limitations clock started on [the date of the union's letter formalizing its decision not to pursue a grievance] cannot succeed on the undisputed facts."); Dittman v. Gen. Motors Corp.–Delco Chassis Div., 941 F. Supp. 284, 286, 288 (D. Conn. 1996), aff'd, 116 F.3d 465 (2d Cir. 1997).

[27] Because the Pilots do not appear to dispute the APA's contention that their second cause of
                 (continued...)

**CONCLUSION**

For the reasons set forth above, the APA's motion (Dkt. No. 13) should be GRANTED and the complaint should be dismissed as time-barred.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan (with a courtesy copy to my chambers).   Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

---

[27]/       (...continued)
action is time-barred (APA Br. at 14; APA Reply Br. at 2 n.1; see Scerba Opp. Br. at 17-18), the RLA violation claim is dismissed for the reasons set forth above.  See, e.g., Hodge v. RCA Global Commc'ns, 93 Civ. 261, 93 Civ. 347, 1994 WL 240373 at *2 (S.D.N.Y. May 26, 1994).

34

Dated:        New York, New York
              December 10, 2013

                                        Respectfully submitted,


                                        **Andrew J. Peck**
                                        United States Magistrate Judge


Copies ECF to:  All Counsel
                Judge Lewis A. Kaplan